State v. Willis

STATE OF NORTH CAROLINA v. DONALD WILLIS

No. 7326SC800

(Filed 9 January 1974)

1. **Criminal Law § 66— in-court identification of defendant — observation at crime scene as basis**

   The trial court in an armed robbery case did not err in allowing an in-court identification of defendant by his victim where the identification was based on observation for five minutes at the well lighted crime scene and not on a pre-trial photographic identification.

2. **Criminal Law §§ 15, 91— change of venue — continuance — newspaper articles as basis — denial proper**

   The trial court in an armed robbery case did not err in refusing to grant defendant's motions for continuance and change of venue based on an article about defendant's trial appearing on page 3 of a city newspaper where, upon having the matter brought to its attention, the trial court on its own motion and without referring to the article or its contents excused all prospective jurors who had access to the newspaper.

APPEAL by defendant from *Grist, Judge,* 7 May 1973, Session of MECKLENBURG County Superior Court.

The defendants, Donald Willis and Timothy L. Morrison, were charged with armed robbery in separate bills of indictment. The cases were consolidated for trial. From a verdict of guilty as charged and active sentences pronounced thereon, the defendant Willis gave notice of appeal.

After entering the pleas and prior to the empaneling of the jury, the defendants moved the Court that a *voir dire* examination be held to determine if the in-court identification was tainted by pre-trial photographic identification having been done in an impermissively suggestive manner. This motion was allowed.

Tony Allen Gore testified that on 27 August 1972 at approximately 4:00 p.m. he was in his room in Myers Hall, a dormitory at Johnson C. Smith University. He was a counselor and had come to school early to assist the new students. Upon answering a knock on his door, he was confronted by two persons he assumed to be incoming freshmen who inquired if a Mr. Jones resided there. Gore told them this was not Jones' room and asked them several questions concerning how they liked school and other general matters. Both the room and the

hall were well lighted. The conversation lasted one or two minutes and the prosecuting witness had ample opportunity to observe their faces.

A few minutes later the two defendants returned and again inquired about Jones. Gore directed them to the information desk. The defendants walked in the room and engaged in some conversation. Still thinking they were freshmen, Gore continued to talk with them. Suddenly the defendant Willis pulled out a revolver, cocked it, pointed it at Gore, and ordered him not to move. Gore's hands and feet were bound and he was placed on his bed. Willis hit Gore in the mouth with his fist. He placed the gun to his head and threatened to kill him. He struck Gore in the head with the pistol.

The defendants proceeded to ransack the room, searching for money and other valuables. They took some money, clothes and rings. They left after threatening to return and kill Gore if he told the police. The room was well lighted, and the defendants spent five minutes there during the robbery. Gore observed them carefully during this time. He testified:

> I said to myself I'd better get a description of these guys. . . . I observed them. I saw that Morrison had a scar over his left eye. I made a specific effort after I had been hit in the head to look at him and get a description of him. I tried to approximate his weight according to my body and I observed Mr. Willis. . . . I looked him in the face in an effort to imprint his face in my mind and retain a description of him. . . .

The robbery was reported to the Charlotte Police. A week later Gore was shown a stack of approximately one hundred photographs. He recognized none. Subsequently he was shown a group of six photographs and immediately recognized one as being Willis. Later, he was shown a group of four photographs and immediately identified Morrison. Officer H. R. Thompson of the Charlotte Police Department testified that he had shown the photographs to Gore. Officer Thompson did nothing to indicate to Gore that any particular photograph was that of the defendants. He testified that Gore immediately identified the photographs.

At the conclusion of the *voir dire,* the Court made findings of fact and conclusions of law based on the hearing. It concluded

as a matter of law that the use of photographs was not impermissively suggestive and that the witness had ample opportunity to observe the two defendants. He found that the in-court identification was based on the observations made at the scene of the crime and ruled that the photographic identification and the in-court identification would be admitted.

Following the *voir dire* ruling the defendants brought to the Court's attention the fact that the *Charlotte News* had published the previous evening a story on page 3 of the paper relating to the facts elicited on the *voir dire*. Based upon this story, the defendants moved for a continuance and a change of venue. Twenty-five jurors were brought into the courtroom, and the Court inquired if any of them had read the May 7th *Charlotte News*. Four of them indicated in the affirmative and were excused by the Court. The Court then inquired if any of the others had access to the *Charlotte News* or discussed any of the stories in last night's paper with any body. There being none who had done so, selection of the jury commenced.

*Attorney General Robert Morgan by Assistant Attorney General Myron C. Banks for the State.*

*Peter H. Gerns for the defendant.*

CARSON, Judge.

[1] The defendant assigns as error the allowing of the in-court identification of the defendants. The defendant contends the pre-trial showing of the photographs was so highly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Prior to the ruling on the in-court identification, the trial court conducted a complete *voir dire* and made findings of fact and conclusions of law based on the evidence. It is well established in North Carolina that such findings of fact and conclusions based thereon on the *voir dire* examination are binding on the appellate courts if supported by evidence. *State v. Accor* and *State v. Moore,* 281 N.C. 287, 188 S.E. 2d 332 (1972); *State v. Pate,* 19 N.C. App. 701, 200 S.E. 2d 217 (1973). There is plenary evidence in the instant case to support such findings. Even if the pre-trial use of the photographs had been suggestive, the facts in this case would support an in-court identification. It is equally well established in this jurisdiction that an in-court identification may be made if the witness had ample opportunity to observe the defendant and the in-court identifica-

tion is based on the observations made at the time of the crime rather than the later use of the photographs. *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972) ; *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972) ; *State v. Neal,* 19 N.C. App. 426, 199 S.E. 2d 143 (1973). The facts in this case would support no other conclusion, and this assignment of error is without merit.

[2] The other assignment of error by the defendant is the Court's refusal to grant a continuance and change of venue because of the news article which appeared on page 3 of the *Charlotte News.* Such motions are addressed to the sound discretion of the trial court and will not be reviewed except when such discretion is abused. *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970) ; *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457 (1968) ; *State v. Fountain,* 14 N.C. App. 82, 187 S.E. 2d 493 (1972). Here, there was no showing of any publicity prior to the article in question. It was short and factual and was on page 3 of the paper. When this matter was brought to the Court's attention, all prospective jurors who even had access to the newspaper were excused. Furthermore, the Court excused the jurors on its own motion and without referring to the article or its contents. It is difficult to perceive how the Court could have been any fairer to the defendants, or how any prejudice could have resulted from this procedure.

No error.

Chief Judge BROCK and Judge MORRIS concur.