STATE OF NORTH CAROLINA v. JAMES HENRY COLLINS AND JESSE JOHNSON

No. 7420SC468

(Filed 7 August 1974)

1. Criminal Law § 169— unresponsive answer — no motion to strike — no prejudice

Where a witness was asked if he saw defendant after he gave defendant a gun, and the witness responded, "No, sir, the next thing I heard somebody said he done what he done," the court's failure to strike the answer was not prejudicial in the absence of a request.

State v. Collins

2. Criminal Law § 87— leading questions — allowance discretionary

The trial court in an armed robbery prosecution did not err in asking leading questions of a witness during a *voir dire* examination and in allowing the solicitor to ask the witness leading questions in the presence of the jury, since the trial judge has discretionary power to permit the use of leading questions and has the power to question a witness himself for the purpose of clarifying his testimony.

3. Criminal Law § 66— identification testimony — sufficiency of voir dire findings

The trial court's findings upon a *voir dire* examination that the witness's observation of the defendants during the robbery, including the kind of guns which they individually displayed, was the basis for his in-court identification and that the identification was not tainted in any way by his photographic observation or a lineup at the county jail were sufficiently specific and detailed.

4. Criminal Law § 80— testimony from notes — admissibility

Testimony of a witness from notes as to what the estranged wife of one defendant had told him did not prejudice appellants since (1) the testimony related only to a third defendant, (2) the record does not show that the witness was in fact reading from his notes but only that counsel for defendants believed he was doing so, and (3) even if the witness was reading from his notes, his testimony would not necessarily have been inadmissible, since there is nothing *per se* wrong with a witness's reading from a document in answer to a question if the words are responsive to the questions asked and if the witness can honestly state that after reading it he is able to recall the events about which he is testifying.

5. Criminal Law § 112— jury instructions — presumption of guilt — lapsus linguae

Trial court's *lapsus linguae* in instructing the jury that defendant was presumed to be guilty until proved guilty beyond a reasonable doubt was not prejudicial where the court several times in its charge correctly stated that defendants were presumed to be innocent and that the State must prove them guilty beyond a reasonable doubt.

APPEAL by defendants from *McConnell, Judge,* 12 November 1973 Session of Superior Court held in RICHMOND County.

Heard in Court of Appeals 19 June 1974.

Defendant appellants James Henry Collins and Jesse Johnson, along with another defendant, Walter Gainey Pegues, who has not appealed, were indicted and tried for armed robbery. The chief witness for the State at trial was James R. Frye, Jr. Frye testified that on the night of 10 July 1973 he was at Rib's Place, a tavern in Richmond County. About 8:30 p.m. he heard someone say, "Hey, stand up, they're robbing the place." He then saw defendant Collins standing behind the bar holding a

shotgun. Defendant Pegues was standing over Shorty, an employee of Rib's Place, holding a shotgun at the back of his head. Defendant Johnson was at the door looking out. When Frye stood up, one of the defendants pointed a gun at him, and Pegues reached into Frye's pocket and took out about $2 in change. A few minutes later defendants left Rib's place.

Before Frye identified defendants as the persons who had robbed him at Rib's Place, the court held a voir dire hearing to determine whether this identification testimony was admissible. During the voir dire hearing Frye testified that he had identified defendant Pegues in a lineup at the Rockingham jail one or two days after the robbery. He was also shown a group of photographs, and he identified two of them as photographs of Collins and Johnson. Frye testified that while Rib's Place "was not lit up like a stadium" at the time of the robbery, he nevertheless "could see very well." At the conclusion of the hearing the court found that Frye's identification of defendants was based on his observation of them at Rib's Place and was not tainted by any impropriety in the photographic identification procedures or the lineup at the Rockingham jail.

The State presented several other witnesses whose testimony supported that of Frye.

Each defendant took the stand and testified that he had not been in Rib's Place on 10 July 1973 and had not robbed James Frye. Josephine Pegues testified for defendants and stated that she was defendant Pegues' wife, but was separated from him; that she was living at the home of Irene Moore; and that defendant Pegues had been with her at Irene Moore's house from 7:40 p.m. on 10 July 1973 until 10:00 or 10:30 a.m. the next day.

Van Parker, an SBI agent, appeared as a rebuttal witness for the State. He stated that he had had an interview with Josephine Pegues prior to the trial. During this interview she told him that she did not see her husband on 10 July 1973, and that he did not arrive at Irene Moores' house until about 2:10 a.m. on July 11.

The jury found defendants guilty as charged, and they were sentenced to prison terms. Defendants Collins and Johnson appealed to this Court.

Attorney General Morgan, by Assistant Attorney General T. Buie Costen, for the State.

Henry L. Kitchin and Benny S. Sharpe for defendant appellants.

BALEY, Judge.

[1] Fulton Junior Moore appeared as a witness for the State and testified that defendant Collins came to his home on July 10 and picked up a gun which Moore had been keeping for him. On cross-examination, counsel for defendants asked Moore: "And did you see him any time thereafter?" Moore answered: "No, sir, the next thing I heard somebody say he done what he done." This answer was hearsay and unresponsive to the question, but it did not accuse Collins of any specific crime and was of doubtful probative value. In the absence of a request, the court's failure to strike this answer was not prejudicial error.

[2] Defendants contend that the trial court erred in asking certain leading questions of the witness James Frye during the voir dire hearing, and also in allowing the Solicitor to use leading questions in his direct examination of Frye in the presence of the jury. This contention cannot be upheld. The trial judge has discretionary power to permit the use of leading questions in order to save time. State v. Bass, 280 N.C. 435, 186 S.E. 2d 384; State v. Clanton, 278 N.C. 502, 180 S.E. 2d 5; State v. Painter, 265 N.C. 277, 144 S.E. 2d 6. He also has the power to question a witness himself for the purpose of clarifying his testimony. State v. Freeman, 280 N.C. 622, 187 S.E. 2d 59; State v. Colson, 274 N.C. 295, 163 S.E. 2d 376, cert. denied, 393 U.S. 1087; State v. Case, 11 N.C. App. 203, 180 S.E. 2d 460.

[3] Defendants next assert that the court erred in admitting the identification testimony of the witness Frye, because its findings of fact made at the conclusion of the voir dire hearing were not sufficiently specific and detailed. The court found from Frye's testimony that his observation of the defendants during the robbery, including the kind of guns which they individually displayed, was the basis for his in-court identification, and the identification "was not tainted in any way by his photographic observation or lineup at the Richmond County Jail." "When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identification(s) made under constitutionally impermissible circumstances, the

trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts." *State v. Tuggle,* 284 N.C. 515, 520, 201 S.E. 2d 884, 887; *State v. McVay,* 277 N.C. 410, 417, 177 S.E. 2d 874, 878; *accord, State v. Cross,* 284 N.C. 174, 200 S.E. 2d 27; *State v. Willis,* 20 N.C. App. 365, 201 S.E. 2d 588.

Defendants' next assignment of error relates to the denial of their motions for nonsuit. The court quite properly denied these motions, for the evidence is amply sufficient to support defendants' convictions.

**[4]** When Van Parker testified as a rebuttal witness for the State, the following proceedings occurred:

"WITNESS: I talked with Josephine Pegues. She made a statement about the evening and night of July 10, 1973.

"Q. What did she say?

"A. She informed me that —

"OBJECTION. OVERRULED.

"MR. KITCHIN [counsel for defendant] : Object to Mr. Parker reading from said document up there.

"MR. LOWDER: [Solicitor] : Objection to the conclusion of counsel, if your honor please.

"MR. KITCHIN: Could the record state that Mr. Parker is reading from some document?

"COURT: Are you using your notes to refresh your recollection?

"A. Yes, sir, I am.

"COURT: Don't read from them.

"Q. Tell in your own words what she said to you happened on that evening.

"A. On July 10, 1973 that the defendant and herself were not living together.

"COURT: What defendant?

"A. Pegues, and that she was living with a cousin, Irene Moore, and that the defendant Pegues was staying

with his mother. She informed me that she did not see the defendant Pegues on July 10, 1973, and that it was approximately 2:10 A.M. on July 11, 1973 that the defendant came to the residence.

"MR. KITCHIN: He's reading straight from his notes again. Objection.

"OVERRULED."

Defendants contend that the court committed error in allowing Parker to read from his notes. This contention is not well founded. First, Parker's testimony related only to defendant Pegues, and it could not have been prejudicial to defendant appellants. Second, the record does not show that Parker was in fact reading from his notes, but only that counsel for defendants believed he was doing so; and the court specifically instructed him not to read from them. Third, even if Parker was reading from his notes, his testimony would not necessarily have been inadmissible. A witness may refer to a document for the purpose of refreshing his memory about certain events. If, after reading the document, he is able to remember the events, he may give testimony about them. *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227, *vacated and remanded on other grounds,* 408 U.S. 940; *State v. Peacock,* 236 N.C. 137, 72 S.E. 2d 612; 1 Stansbury, N. C. Evidence (Brandis rev.), § 32. When the witness is able to remember the events after reading the document to himself, the better practice is for him to describe them in his own words, rather than reading the document aloud. *State v. Peacock, supra.* But there is nothing *per se* wrong with his reading from the document in answer to a question, if the words of the document are responsive to the question asked, and if he can honestly state that after reading it he is able to recall the events about which he is testifying. Here the witness expressly stated that the use of his notes refreshed his recollection of the conversation with Mrs. Pegues, and his testimony was admissible whether or not he was reading from his notes.

At the conclusion of all the evidence defendants moved to dismiss all charges against them arising out of the robbery at Rib's Place, other than the cases then being tried. This motion was properly denied. The other charges against defendants were not before the court, and it had no authority to dismiss them.

[5]  At one point in its charge to the jury the court stated:

> "Now, the State has offered evidence and as I have
> stated, the defendant is presumed to be guilty until the State
> has satisfied you from the evidence and beyond a reason-
> able doubt, and the State contends they have offered evi-
> dence from which you should be satisfied from the evidence
> and beyond a reasonable doubt of their guilt."

Taken literally, this sentence does not make sense, as one could
not be presumed guilty until proved to be guilty beyond a reason-
able doubt. It seems clear that this is a *lapsus linguae* and that
the jury could not reasonably have been misled. Several times
in its charge the court correctly stated that the defendants were
presumed to be innocent and that the State must prove them
guilty beyond a reasonable doubt. The instructions to the jury
must be considered as a whole, and an isolated portion of these
instructions which at best may be ambiguous cannot be detached
from the context of the charge and held to be prejudicial if the
charge as a whole is correct. *State v. Gaines,* 283 N.C. 33, 194
S.E. 2d 839; *State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683,
*cert. denied,* 409 U.S. 948.

Defendants have shown no prejudicial error in their trial.

No error.

Judges BRITT and MORRIS concur.