STATE OF NORTH CAROLINA v. MERVIN VERRON ARMSTRONG

(No. COA09-1276)

(Filed 20 April 2010)

**1. Constitutional Law— double jeopardy—second-degree murder and DWI—evidence of malice**

Defendant's conviction and sentencing for DWI and second-degree murder did not violate double jeopardy principles, applying *State v. McAllister*, 138 N.C. App. 252. There was evidence that defendant drove while impaired and while his license was revoked after prior convictions for driving while impaired, so that there was evidence of malice other than the impaired driving in this case. Although defendant argued that the DWI was an element of second-degree murder in this case, the trial judge correctly instructed the jury that they could not find defendant guilty of second-degree murder without also finding malice.

**2. Criminal Law— driving while license revoked—instruction**

There was no prejudicial error where the trial court erroneously instructed the jury that the State had proved defendant's knowledge of suspension of his driver's license, but immediately afterward correctly instructed the jury that it must return a verdict of not guilty if the State had not proved notice beyond a reasonable doubt. Viewing the instruction as a whole, the *lapsus linguae* did not implicitly direct a verdict of guilty against defendant.

**3. Appeal and Error— preservation of issues—insufficient evidence—no motion to dismiss at trial**

Defendant did not preserve for appeal an argument that there was insufficient evidence of the knowledge requirement in a prosecution for driving with a revoked license where defendant did not move at trial for a dismissal of the charge.

**4. Sentencing— prior record points—out-of-state convictions**

The trial court did not erroneously assign prior record points to out-of-state convictions where defendant had three driving under the influence convictions in Alabama. The trial court concluded that the Alabama offenses were substantially similar to the DWI provisions in the North Carolina statutes.

STATE v. ARMSTRONG

[203 N.C. App. 399 (2010)]

**5. Evidence— expert testimony—no notice in discovery—no prejudice**

The trial court erred by allowing a witness to give expert testimony on the ingredients and effect of Narcan in a prosecution for second-degree murder and DWI. Based on testimony regarding the witness's qualifications and on the substance of his opinion, the witness provided expert testimony even though the State did not properly notify defendant during discovery that it intended to offer the witness as an expert. However, the error was harmless in light of the fact that the State presented sufficient evidence of malice beyond defendant's high blood-alcohol level and in light of the fact that the evidence was cumulative.

**6. Appeal and Error— independent juror investigation—constitutional theory not raised below—not preserved for appeal**

The trial court did not err by denying defendant's motion for appropriate relief where a juror came forward after the trial to indicate that another juror had investigated evidence on the Internet. Although defendant contended that he was denied his constitutional right to a jury of twelve and that this was reversible error *per se*, he did not raise the issue at trial or preserve it for appellate review.

**7. Constitutional Law— right to confront witnesses—independent juror investigation—standard**

The trial court applied the correct standard to an alleged violation of the right to confront witnesses by placing the burden on the State to rebut the presumption of prejudice and then determining whether the evidence was harmless beyond a reasonable doubt.

**8. Criminal Law— juror misconduct—independent investigation—harmless error**

The trial court did not err in a prosecution for driving while impaired and for second-degree murder by concluding that juror misconduct was harmless beyond a reasonable doubt in light of the evidence presented by the State's witnesses. There is no reasonable possibility that extraneous information could have had an effect on the average juror.

Appeal by Defendant from judgments entered 9 December 2008 and order entered 19 February 2009 by Judge David S. Cayer in

STATE v. ARMSTRONG

[203 N.C. App. 399 (2010)]

Superior Court, Mecklenburg County. Heard in the Court of Appeals 8 March 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

WYNN, Judge.

Defendant Mervin Verron Armstrong appeals from his convictions on the charges of second-degree murder, driving while impaired ("DWI"), and driving while license revoked ("DWLR") arising out of an automobile crash in which his passenger was killed. Upon review, we uphold Defendant's convictions.

At 6:50 p.m. on 28 February 2007, Robert Litzinger, Sr., a refrigeration service technician, drove a company panel truck southbound on South Tryon Street in Charlotte, North Carolina. Shortly after Litzinger observed a black Toyota Corolla driven by Defendant approach from General Drive, a side street to the left, Litzinger's truck collided with the right side of Defendant's car in a T-Bone collision.

Todd Howard Passoms saw the collision as he drove southbound on South Tryon Street approximately 100 feet behind Litzinger. Passoms stated that Defendant's vehicle approached from a side street; did not stop at the stop sign at the intersection with South Tryon Street; traveled across both northbound lanes; failed to stop or pause in the median before entering the southbound lanes; and traveled directly into Litzinger's path. Passoms stated that he could not tell whether Litzinger applied his brakes, but noted there was no way that Litzinger would have had time.

The collision caused Litzinger's truck to flip onto the driver's side and come to rest in the far right lane of the street. Passoms pulled over, ran to Defendant's vehicle, and observed extensive damage to the car. The passenger in the front seat, Terrence Antonio Pretty, sat motionless and had no discernable pulse. It was later determined that Pretty had died from accident-related blunt trama injuries. Passoms then checked on Defendant, who was unconscious in the driver's seat. Passoms smelled a mild odor of alcohol in the front compartment of the vehicle. Passoms then called 911.

Paramedics John Marlow and Randall Burch responded to the scene at approximately 7:10 p.m. Marlow verified that Pretty was deceased. Charlotte Fire Department crew members extracted Defendant from the Toyota and Paramedics put him in an ambulance. Burch and Marlow stated that they smelled alcohol on Defendant's breath. Defendant exhibited no injuries other than a laceration on his face and scratches on his arms but he was unresponsive. Defendant was placed on IVs, and paramedics administered saline to elevate his blood pressure. Paramedics also administered Narcan, an anti-opiate, because Defendant was unresponsive and exhibited signs of trauma, and because his pupils were pin points—another sign of opiate overdose.

Neither Marlow nor Burch knew the precise chemical composition of Narcan, but both stated that Defendant was not given any alcohol. Burch testified that Narcan does not contain any alcohol. Jennifer Mills, a forensic chemist of thirty years, testified as an expert for the State. She stated on cross-examination that she did not know of any medicines that could have increased Defendant's blood-alcohol level.

Officer Steven Ashley Williams of the Charlotte-Mecklenburg Police Department arrived on the scene at approximately 7:15 p.m. Inside Defendant's car, Officer Williams discovered opened and unopened beer cans and an opened pint of gin. While investigating the scene, Officer Williams noted that Litzinger's truck had left skid marks, and that there was a stop sign on General Drive at the intersection with South Tryon Street.

Matthew Pressley, an officer and certified chemical analyst with the Charlotte-Mecklenburg Police Department, arrived at the hospital at approximately 8:15 p.m. and spoke with Defendant. Defendant acknowledged being in a collision but denied driving. Officer Pressley observed that Defendant had slurred speech, a strong odor of alcohol on his breath, and glassy bloodshot eyes. Officer Pressley charged Defendant with DWI and DWLR.

At 8:39 p.m., Officer Pressley requested that Defendant submit to a blood draw. Defendant consented but refused to sign the rights form and declined to call any witnesses. Officer Pressley requested that Jamie Thomason, a hospital nurse, draw Defendant's blood for alcohol testing. The sample indicated a blood-alcohol concentration of 0.24. Thomason had previously drawn Defendant's blood for medical purposes at 7:45 p.m. That sample indicated a blood-alcohol con-

centration of 0.26. Defendant was not given anything containing alcohol during treatment before his blood was drawn.

Officer Jesse Wood testified at trial that DMV records showed that Defendant's license had been indefinitely suspended as of December 2005 and that Alabama court records indicated that Defendant had been convicted of driving under the influence of alcohol in 1994, 1998, and 1999.

Defendant recalled Officer Williams as an accident reconstruction expert. Officer Williams testified that in March of 2007, he estimated Litzinger's pre-impact speed at fifty-five miles per hour.

Paul Glover, a research scientist and the head of the Forensic Test for Alcohol Branch of the North Carolina Department of Health and Human Services, testified for the State that Narcan neither contains alcohol nor affects blood-alcohol level.

On 2 July 2007, Defendant was indicted for second-degree murder, felony death by motor vehicle, assault with a deadly weapon inflicting serious injury, transportation of an open container of an alcoholic beverage after consuming alcohol, DWI, and DWLR. Defendant was tried at the 1 December 2008 Criminal Session of Superior Court in Mecklenburg County. At the close of all evidence, the State dismissed the felony death by motor vehicle and open container charges. The jury found Defendant guilty of second-degree murder, DWI, and DWLR. The trial court consolidated the murder and DWLR convictions for judgment and sentenced Defendant as a prior record level II offender.

A few days after judgment was entered against Defendant, Juror Lisa Breidenbach came forward with evidence of juror misconduct. An evidentiary hearing was held 15 December 2008. Juror Breidenbach testified that during deliberations another juror stated that she had looked up Narcan on the internet and learned that it had no effect on the body as to alcohol content. In light of this testimony, Defendant filed a motion for appropriate relief ("MAR") on 17 December 2008.

The trial court issued an order in which it found as a fact that Juror Sarah Bumgarner did commit the alleged misconduct. The trial court found that the misconduct violated Defendant's constitutional rights. However the trial court denied the MAR on the ground that the constitutional violation was harmless beyond a reasonable doubt.

On appeal, Defendant raises six arguments in which he contends the trial court: (I) violated double jeopardy principles when it entered judgment on both the murder and the DWI convictions; (II) erred in its instructions on proof of knowledge in the DWLR charge; (III) erred in allowing the DWLR case to go to the jury because there was insufficient evidence of the knowledge element; (IV) erred in assigning prior record points to Defendant's three out-of-state convictions; (V) erred in admitting the expert opinion testimony of Paul Glover; and (VI) erred in denying Defendant's motion for appropriate relief.

I

**[1]** Defendant first argues that his DWI conviction must be vacated because entry of judgments in that case and in the second-degree murder case violates double jeopardy principles and the Fifth Amendment to the United States Constitution.

At trial, the trial court submitted the DWI case to the jury, instructing the jury on the three requisite elements. The trial court then submitted the second-degree murder case to the jury using pattern jury instruction 206.32, which has as its fourth element that the defendant violated a state law governing the operation of motor vehicles. *See* N.C.P.I. 206.32 (2001). The law against DWI was the only motor vehicle law submitted as the fourth element of the murder charge. The jury found Defendant guilty of DWI and second-degree murder.

Defendant argues that because all of the elements of DWI were included within the elements of second-degree murder, the DWI merged into the murder. Defendant concludes from this that entry of judgment on both offenses violates double jeopardy principles.

"The double jeopardy clause prohibits (1) a second prosecution for the same offenses after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple convictions for the same offense." *State v. Ezell*, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003). Defendant argues that he was subject to multiple convictions for the same offense, citing *State v. Lopez*, 363 N.C. 535, 536, 681 S.E.2d 271, 272 (2009) (explaining the merger of offenses where defendant is convicted of both a greater and a lesser-included offense). We have recognized, however, that "double jeopardy does not prohibit multiple punishment for two offenses—even if one is included within the other under . . . if both are tried at the same time and the legislature intended for both offenses to be separately punished." *Ezell*, 159 N.C. App. at 107, 582 S.E.2d at 682.

We confronted an argument similar to Defendant's in *State v. McAllister*, 138 N.C. App. 252, 530 S.E.2d 859, *appeal dismissed*, 352 N.C. 681, 545 S.E.2d 724 (2000). Defendant in *McAllister* was convicted of DWI and second-degree murder. *Id.* at 255, 530 S.E.2d at 861. On appeal, he argued "that his Fifth Amendment right to protection from Double Jeopardy was violated when he was punished twice for impaired driving because each element of that offense was necessary to prove the second degree murder offense and he was sentenced for both offenses." *Id.* at 255, 530 S.E.2d at 862. This Court specifically rejected that argument, stating "[w]e disagree and believe that the legislature intended to create two separate offenses. We note that punishment for second degree murder is controlled by structured sentencing while punishment for driving while impaired is exempted from the structured sentencing provisions." *Id.* at 256, 530 S.E.2d at 862.

Defendant attempts to distinguish *McAllister* by contending that in that case, the defendant argued that the DWI was the basis for the malice element of second-degree murder, whereas Defendant here argues that under the particular jury instructions given, DWI was the fourth element of second-degree murder. Strictly speaking, DWI is not an element of second-degree murder at all, the jury instructions in this case notwithstanding. *See* N.C. Gen. Stat. § 14-17 (2009); *McAllister*, 138 N.C. App. at 256, 530 S.E.2d at 862. Moreover, the trial judge correctly instructed the jury that they could not find Defendant guilty of second-degree murder without also finding malice. Thus, Defendant's attempt to distinguish *McAllister* on this basis is unavailing.

Defendant argues further that in *McAllister* there was other evidence of malice in addition to the DWI. We have elsewhere recognized that sufficient evidence of malice existed in a second-degree murder prosecution where a defendant drove while impaired after prior convictions for driving while impaired, and the defendant drove while his license was revoked. *State v. McBride*, 109 N.C. App. 64, 68, 425 S.E.2d 731, 734 (1993). Evidence of both of these factors was presented in this case. Consequently, "there was evidence to support a finding of malice in the present case other than the fact that defendant was driving while impaired[.]" *McAllister*, 138 N.C. App. at 257, 530 S.E.2d at 863.

Applying *McAllister*, we hold that Defendant's conviction and sentencing for DWI and second-degree murder did not violate double jeopardy principles.

II

**[2]** Defendant next argues that he is entitled to a new trial in the DWLR case because the trial court's jury instruction on proof of knowledge was erroneous in law and unconstitutionally peremptory.

Defendant was charged with driving while his driver's license was revoked under N.C. Gen. Stat. § 20-28(a) and pled not guilty. During the charge conference, the trial court indicated it would use the pattern instruction on DWLR.

Pattern Jury Instruction 271.10 states:

Proof beyond a reasonable doubt that the State complied with the three requirements of the notice provisions permits, but does not compel you to find that defendant received the notice and thereby acquired knowledge of the suspension. The State must prove the essential elements of the charge, including the defendant's knowledge of the suspension, from the evidence beyond a reasonable doubt.

N.C.P.I. 271.10 (2001). In the present case, after agreeing to give the above instruction, the trial court instead charged the jury as follows:

Proof beyond a reasonable doubt occurs with [sic] the State has complied with the three requirements of the notice provision which does tell you that the Defendant received notice and thereby acquired the knowledge of the suspension. Therefore, the State has proved the essential elements of the charge, including the Defendant's knowledge of the suspension, from the evidence beyond a reasonable doubt.

Defendant argues that the instruction given was an incorrect statement of the law, and that it unconstitutionally directed a verdict of guilty against defendant. Immediately following the contested instruction, the trial court continued,

So, if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant drove a motor vehicle on the highway while his driver's license was suspended, and that the Defendant knew on that date that his license was suspended because at least four days before the alleged offense, the Department of Motor Vehicles had deposited a notice of the suspension in the United States mail, in an envelope with postage pre-paid, and addressed to the Defendant at his address as shown by the records of the Department of Motor Vehicles, it would be your

duty to return a verdict of guilty. If you do not so find, or if you have a reasonable doubt about one or more of these things, it would be your duty to return a verdict of not guilty.

This section of the jury instruction tracks the language of the pattern jury instruction for DWLR. *See* N.C.P.I. 271.10 (2001).

"The rule is that the trial court in charging a jury may not give an instruction which assumes as true the existence or nonexistence of any material fact in issue." *State v. Cuthrell,* 235 N.C. 173, 174, 69 S.E.2d 233, 234 (1952). "When a judge undertakes to define the law he must state it correctly, and if he does not, it is prejudicial error sufficient to warrant a new trial." *State v. Stroupe,* 238 N.C. 34, 40, 76 S.E.2d 313, 318 (1953). "This Court has uniformly held that where the court charges correctly in one part of the charge, and incorrectly in another part, it will cause a new trial, since the jury may have acted upon the incorrect part of the charge." *Id.* at 40-41, 76 S.E.2d at 318; *see also State v. Castaneda,* —— N.C. App. ——, ——, 674 S.E.2d 707, 713 (2009) (holding that there was prejudicial error where trial court twice identified defendant as an accomplice to the crime, which was "the only issue in dispute at trial").

On the other hand, our Supreme Court has recognized situations in which an erroneous instruction does not warrant reversal. "Where the instructions to the jury, taken as a whole, present the law fairly and clearly to the jury, we will not find error even if isolated expressions, standing alone, might be considered erroneous." *State v. Morgan,* 359 N.C. 131, 165, 604 S.E.2d 886, 907 (2004), *cert. denied, Morgan v. North Carolina,* 546 U.S. 830, 163 L. Ed. 2d 79 (2005). "This Court has repeatedly held that a lapsus linguae not called to the attention of the trial court when made will not constitute prejudicial error when it is apparent from a contextual reading of the charge that the jury could not have been misled by the instruction." *State v. Baker,* 338 N.C. 526, 565, 451 S.E.2d 574, 597 (1994) (holding there was no prejudicial error where the trial court once instructed the jury to find the defendant guilty if they had reasonable doubt); *see also State v. Collins,* 22 N.C. App. 590, 596, 207 S.E.2d 278, 282, *cert. denied,* 285 N.C. 760, 209 S.E.2d 284 (1974) (holding there was no prejudicial error where the trial court instructed the jury that defendant was presumed guilty).

In the present case, the trial court erroneously instructed the jury that the State had proved Defendant's knowledge of the suspension. But the trial court immediately afterward correctly instructed the

jury that if the State had not proved beyond a reasonable doubt that Defendant had received notice of the suspension, it would be the duty of the jury to render a verdict of not guilty. Moreover, the trial court stated at the beginning of the entire instruction that "[t]he State must prove to you that the Defendant is guilty beyond a reasonable doubt." At the end of the instruction, the trial court charged, "[i]t is your exclusive province to find the true facts of the case and to render a verdict reflecting the truth as you find it."

This situation is analogous to *Baker* and *Collins* where "the trial court repeatedly instructed the jury that the State had the burden of proving defendant was guilty beyond a reasonable doubt." *Baker*, 338 N.C. at 565, 451 S.E.2d at 597. Contrary to Defendant's assertions, the trial court did not explicitly direct a verdict of guilty against Defendant, and—in view of the instruction taken as a whole—we cannot conclude that the lapsus linguae did so implicitly. Accordingly, we hold that "[r]eading the charge in its entirety, we are convinced the jurors could not have been misled . . . ." *Id.* Defendant has consequently failed to demonstrate prejudicial error regarding the jury instruction.

### III

**[3]** Defendant next argues that his DWLR conviction must be vacated because there was insufficient evidence of the knowledge requirement.

At the close of the State's evidence, Defendant moved to dismiss the second-degree murder and assault with a deadly weapon charges. At the close of all the evidence, Defendant renewed his motion to dismiss the charge of assault with a deadly weapon. Defendant at trial never moved to dismiss the charge of DWLR.

Our Rules of Appellate Procedure specify how a defendant preserves the alleged error of insufficient evidence.

(3) *Sufficiency of the Evidence.* In a criminal case, a defendant may not make insufficiency of the evidence to prove the crime charged the basis of an issue presented on appeal unless a motion to dismiss the action, or for judgment as in case of nonsuit, is made at trial.

N.C. R. App. P. 10(a)(3) (2010). Defendant did not move at trial for a dismissal of the DWLR. Defendant has therefore failed to preserve this issue for appellate review.

IV

**[4]** Defendant next argues that he is entitled to a new sentencing hearing in the murder case because the trial court erroneously assigned prior record points to Defendant's three out-of-state convictions and sentenced him as a prior record level II offender. Defendant contends that the assignment of points was error because (1) the Alabama offenses are not substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina; and (2) the State failed to prove the Alabama offenses are classified as misdemeanors in Alabama.

During the trial and sentencing hearing the State submitted evidence tending to show that Defendant had three prior convictions for driving under the influence of alcohol in Alabama, violations of Ala. Code § 32-5A-191, in the 1990s. The State submitted to the trial court for consideration the text of the relevant Alabama statute.[1] No evidence offered at trial shows that Alabama classifies violations of Ala. Code § 32-5A-191 as misdemeanors. The only prior convictions Defendant had were the three prior Alabama convictions.

At the end of the sentencing hearing in the murder case, the trial court concluded that the Alabama offenses were substantially similar to the DWI provisions of the North Carolina statutes. The trial court treated the offenses as Class A1 or Class 1 misdemeanors and assigned one prior record point to each of the three Alabama convictions. The trial court thus found a total of three prior record level points and concluded that Defendant was a prior record level II offender for sentencing purposes.

Our Structured Sentencing statute provides:

If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina, the conviction is treated as a Class A1 or Class 1 misdemeanor for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2009). The same statute specifies that "[e]xcept as otherwise provided in this subsection, a conviction

---

1. State's Exhibit No. 39 includes certified copies of Ala. Code § 32-5A-191 (Supp. 1984), Ala. Code § 32-5A-191 (Supp. 1994), and Ala. Code § 32-5A-191 (Supp. 1998). State's Exhibit No. 40 includes a certified copy of the current statute, Ala. Code § 32-5A-191 (1999).

occurring in a jurisdiction other than North Carolina . . . is classi-
fied as a Class 3 misdemeanor if the jurisdiction in which the of-
fense occurred classifies the offense as a misdemeanor." *Id.* Under
the statute, a conviction classified as a Class 3 misdemeanor
would not receive any prior record level points. N.C. Gen. Stat.
§ 15A-1340.14(b)(5) (2009).

Defendant argues that the Alabama offenses were not "substan-
tially similar to an offense classified as a Class A1 or Class 1 misde-
meanor in North Carolina." N.C. Gen. Stat. § 15A-1340.14(e) (2009).
Defendant contends that DWI in North Carolina is not classified as a
Class A1 or Class 1 misdemeanor. It follows that Defendant's prior
convictions in Alabama could not be analogized to DWI convictions
in North Carolina which would justify the assignment of one prior
record level point each under N.C. Gen. Stat. § 15A-1340.14 (b)(5).

Defendant overlooks the fact that this Court determined in *State
v. Gregory*, 154 N.C. App. 718, 722, 572 S.E.2d 838, 841 (2002), "that a
DWI conviction is a Class 1 misdemeanor." It is true that the *Gregory*
Court made this determination for the purposes of interpreting a rule
of North Carolina evidence, but we find the reasoning equally applic-
able here. The Court in *Gregory* began by observing that DWI is a mis-
demeanor under N.C. Gen. Stat. § 20-138.1(d) (the DWI statute). *Id.*
"If the offense is a misdemeanor for which there is no classification,
it is as classified in G.S. 14-3." N.C. Gen. Stat. § 15A-1340.23(a) (2009).
"Any misdemeanor that has a specific punishment, but is not assigned
a classification" is classified as a Class 1 misdemeanor "[i]f that max-
imum punishment is more than six months imprisonment." N.C. Gen.
Stat. § 14-3(a) (2009). "The maximum punishment permitted by
statute for misdemeanor DWI is imprisonment for 'a minimum term
of not less than 30 days and a maximum term of not more than 24
months.' " *Gregory*, 154 N.C. App. at 722, 572 S.E.2d at 841 (quoting
N.C. Gen. Stat. § 20-179(g) (2001)). Therefore, DWI is a Class 1 mis-
demeanor and Defendant's argument to the contrary must fail.

Defendant argues further that the State did not produce any evi-
dence that the DWI offenses were classified as misdemeanors in
Alabama. The State observes that the Alabama statutes offered to the
trial court in State's exhibit No. 39 all provided that a first conviction
of driving while under the influence could result in imprisonment
for up to one year. *See* Ala. Code § 32-5A-191 (Supp. 1984); Ala. Code
§ 32-5A-191 (Supp. 1994); Ala. Code § 32-5A-191 (Supp. 1998).
Following the reasoning from *Gregory*, because the Alabama convic-
tions could have resulted in imprisonment for more than six months,

those convictions were properly classified as misdemeanors. *See* N.C. Gen. Stat. § 14-3(a)(1) (1999). Indeed, Alabama does classify DWIs as misdemeanors. *See* Ala. Code § 13A-1-2(9) (1999) (defining "misdemeanor" as "[a]n offense for which a sentence to a term of imprisonment not in excess of one year may be imposed"). Thus, Defendant's Alabama convictions were properly classified as misdemeanors.

Accordingly, there is no merit to Defendant's argument that the trial court erroneously assigned prior record points to Defendant's out-of-state convictions.

V

[5] Defendant next argues that he is entitled to a new trial because the trial court erroneously admitted Paul Glover's testimony. Defendant asserts that the error was prejudicial because Glover's evidence was crucial to the jury's finding of malice in the second-degree murder conviction.

Before trial, the State provided discovery to Defendant which did not list Glover as either a lay or expert witness. On direct examination during the State's case, two paramedics and a nurse testified that they did not administer any alcohol to Defendant but that Defendant was given Narcan on the way to the hospital. On cross-examination, these witnesses admitted they did not know the chemical composition of Narcan or what all of the side effects of the drug might be.

Near the end of the State's case and acknowledging that there had been no discovery regarding Glover, the State moved to call Glover as an expert witness on alcohol physiology and pharmacology. Glover had no prior connection to Defendant's case but was found by prosecutors in the courthouse while he was testifying in a different case. The trial court sustained Defendant's objection, and Glover was not allowed to testify as an expert as part of the State's case-in-chief.

Once the State rested, Defendant presented his case-in-chief. This consisted of recalling State's witness Officer Steven Williams to provide evidence regarding accident reconstruction. On rebuttal, the State again moved to call Paul Glover, this time as a lay witness, to testify that Narcan contains no alcohol and has no effect on blood-alcohol level. Defendant objected, alleging that the State was attempting to offer expert opinion without saying Glover was an expert.

The trial court held a voir dire of Glover. Glover testified that he was the branch head and a research scientist for the Forensic Test for

Alcohol, a branch of the North Carolina Department of Health and Human Services. He indicated that he was neither a doctor nor a pharmacologist, but that in each case in which he had been called to testify, he testified as an expert. When asked about Narcan, Glover replied that "I have been able to read what the PDR [Physician's Desk Reference] says about it." He clarified that even before this review, he did know how Narcan is used and what it does and that it has no effect on alcohol. "I am qualified," he said, "as an expert on the effects of . . . drugs in DWI cases."

At the end of the voir dire, Defendant objected to the testimony, on the grounds that Glover's opinion was "based on no greater knowledge than any other witness" since he had merely reviewed the PDR. When the State observed that other witnesses had already testified to the ingredients of Narcan, Defendant argued that "this witness is thus cumulative." The trial court overruled Defendant's objection and allowed Glover to testify as a lay witness to the effect of Narcan on blood-alcohol level.

Defendant now argues that the trial court erred in allowing Glover to testify because Glover's evidence was (1) expert opinion masquerading as lay testimony; (2) inadmissible because he was not qualified in the area of his testimony; and (3) inadmissible because his proffered method of proof was not sufficiently reliable.

Defendant relies on *State v. Blankenship*, 178 N.C. App. 351, 631 S.E.2d 208 (2006), for the proposition that expert opinion masquerading as lay testimony is not admissible. This somewhat overstates our holding in *Blankenship*. In that case, the State sought to call a witness as an expert without having complied with the notice requirements of N.C. Gen. Stat. § 15A-903(a)(2). *Id.* at 355, 631 S.E.2d at 211. "The trial court stated that since Agent Razzo would not be giving his opinion as to the specific facts of defendant's case, and he had not performed any tests or examinations on any of the evidence in the case, he would be permitted to testify as a fact witness." *Id.* Upon calling the witness to the stand, the State attempted to tender the witness as an expert. *Id.* The trial court refused to accept the witness as an expert but permitted the witness to testify, over defendant's objection, "concerning the manufacturing process of methamphetamine." *Id.*

On appeal, defendant argued that the trial court erred when it allowed Agent Razzo to testify and found that the State had not violated discovery procedures. *Id.* at 353, 631 S.E.2d at 210. This Court

agreed that the witness was testifying as an expert and that the trial court abused its discretion in allowing him to testify as such since "defendant was not provided sufficient notice that the State would be presenting any expert witnesses." *Id.* at 356, 631 S.E.2d at 212. The issue in *Blankenship* was thus whether the trial court erred in permitting the witness to testify at all without the State having complied with discovery requirements. *Id. Blankenship* did not establish a new rule of evidence to prohibit categorically all expert opinion disguised as lay testimony, as Defendant suggests.

Although Defendant somewhat misstates the import of *Blankenship*, we cannot ignore its obvious similarity to the facts before us. As in *Blankenship*, the State here sought to introduce expert testimony without having complied with the discovery requirements of N.C. Gen. Stat. § 15A-903(a)(2). As in *Blankenship*, the trial court refused to allow the State to tender the witness as an expert, but allowed the same person to testify as a lay witness. Finally, as in *Blankenship*, Defendant argues on appeal that the trial court erred in allowing the witness to testify. To determine whether the trial court erred as in *Blankenship*, we must determine whether Glover in fact testified as an expert.

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2009). "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009).

*Blankenship* explained its determination of the witness's status as an expert thus:

Although the trial court permitted Agent Razzo to testify as a so-called lay witness, we hold that he in fact qualified as, and testified as, an expert witness. The jury was permitted to hear testimony about his extensive training and experience in the process of manufacturing methamphetamine and clandestine laboratory investigations, along with his specialized knowledge of the manufacturing process of methamphetamine. Also, the State specifically tendered Agent Razzo as an expert witness, and the trial

court failed to take any action to remedy the State's attempt to tender Agent Razzo as an expert. We hold that based on the presentation of evidence concerning Agent Razzo's extensive training and experience, he was "better qualified than the jury as to the subject at hand," and he testified as an expert witness.

*Id.* at 356, 631 S.E.2d at 211 (quoting *State v. Davis*, 106 N.C. App. 596, 601, 418 S.E.2d 263, 267 (1992), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993)).

The Court in *Blankenship* thus considered (1) that the witness testified to his qualifications and (2) that the State attempted to tender him as an expert. A witness's qualifications alone do not make the witness an expert witness. *See Turner v. Duke University*, 325 N.C. 152, 167-68, 381 S.E.2d 706, 715-16 (1989). Nor does the fact that a witness is better qualified than the jury to render an opinion. "A witness who is better qualified than the jury to form a particular opinion may satisfy the Rule, but the Rule does not explicitly provide that it is satisfied *only* by such a witness. The Rule should not be interpreted to require such a witness." 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 184 (4th ed. 1993).

At the same time, the touchstone of expert testimony is not that the proponent of the evidence sought to tender an expert. Rather, our Courts have recognized that a witness may be accepted as an expert by implication. *See State v. Wise*, 326 N.C. 421, 431, 390 S.E.2d 142, 148 (holding that a witness was an expert who testified based on her training and experience to characteristics of abused children), *cert denied*, *Wise v. North Carolina*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990). In *Wise*, our Supreme Court explained that "the trial court's overruling of defense counsel's objection to the opinion testimony constituted an implicit finding that the witness was an expert." *Id.* at 430, 390 S.E.2d at 148. Stated differently, "a finding that the witness is qualified as an expert is implicit in the trial court's ruling admitting the opinion testimony." *Id.* at 431, 390 S.E.2d at 148.

In the present case, the State called Paul Glover to the stand and elicited extensive testimony concerning his training and experience.[2] Glover then testified, over Defendant's objection, that Narcan contains no alcohol, and that it has no effect on blood-alcohol content. Based on the testimony regarding Glover's qualifications and on the

___

2. Glover's qualifications, including his current occupation as branch head and research scientist at Forensic Test for Alcohol and his educational background, cover nearly two pages of the transcript.

STATE v. ARMSTRONG

[203 N.C. App. 399 (2010)]

substance of his opinion admitted over objection, we hold that Glover provided expert testimony. Because the State did not properly notify Defendant during discovery that it intended to offer Glover as an expert, the trial court erred in allowing him to testify as such. *See Blankenship*, 178 N.C. App. at 356, 631 S.E.2d at 212. We must now determine whether Defendant was prejudiced by the error.

Defendant argues that "the critical factor establishing second-degree murder implied malice was the extremely high blood-alcohol level of defendant's blood when it was drawn in the hospital." Defendant does not argue that the State presented insufficient evidence of DWI. Rather, Defendant suggests that the jury's finding of malice turns on his "extremely high" blood-alcohol level. Because Defendant's blood-alcohol level may have been affected by Narcan, it follows—according to Defendant—that the State did not establish that his high blood-alcohol level was the result of voluntary intoxication.

We explained above (in section I), however, that DWI is not a substitute for the malice element of second-degree murder. As in *McAllister*, there was sufficient evidence of malice in this case beyond the evidence of Defendant's subsequent impairment. Glover's testimony, if it had any effect at all, merely rebutted Defendant's assertion of Narcan's effects, an assertion which Defendant offered no affirmative evidence to support. Consequently, Defendant fails to persuade that Glover's opinion was crucial to the jury's finding of malice.

Furthermore, there is sufficient other evidence to support the State's assertion that Glover's testimony was merely corroborative. State's witness Marlow testified that he did not put any alcohol into Defendant and that Narcan has very few side effects. State's witness Burch testified that Narcan does not contain any alcohol. State's witness Thomason testified that Defendant was not given anything containing alcohol during treatment before his blood was drawn. Finally, State's witness Mills, a forensic chemist of thirty years who testified as an expert, stated that she did not know of any medicines that could have increased Defendant's blood-alcohol level. Glover then testified that there is no alcohol in Narcan and that it has no effect on blood-alcohol level.

In sum, we hold that the trial court erred in allowing Glover, over objection, to provide expert testimony on the ingredients and effect of Narcan. However, we hold that this error was harmless in light of

the fact that the State presented sufficient evidence of malice beyond Defendant's high blood-alcohol level and in light of the fact that Glover's evidence was, as Defendant's trial counsel recognized, cumulative of evidence that had already been admitted.

VI

[6] Defendant next argues that the trial court erred in denying his motion for appropriate relief on the ground that the unconstitutional jury misconduct was harmless beyond a reasonable doubt.

After the trial ended and the verdict was received, Juror Lisa Breidenbach contacted the bailiff regarding juror misconduct. Breidenbach indicated that she was concerned that some of the jurors had received some information that was not part of the trial. The trial court held a hearing on 15 December 2008.

Breidenbach testified at the hearing that another one of the jurors, on the second day of deliberations, said that she had gone to the internet and looked up Narcan. This juror told the others that they didn't have to worry about it, as it had no effect on the body as far as alcohol content. Breidenbach told the juror that she was not supposed to do that, and the juror responded that she didn't care. Defendant filed a MAR on 17 December 2008.

The trial court issued an order on 19 February 2009 in which it found as a fact that Juror Bumgarner did commit the alleged misconduct. The trial court found moreover that the misconduct violated Defendant's constitutional right to confront the witnesses against him. However the trial court denied the MAR on the ground that the constitutional violation was harmless beyond a reasonable doubt.

Defendant argues that the trial court's disposition of his MAR is incorrect for two reasons: (1) the trial court did not apply the correct legal standard of prejudice; (2) the trial court's conclusion that the misconduct was harmless beyond a reasonable doubt is not supported by the record. Defendant contests the factual basis of the trial court's findings of fact Nos. 14 and 8. These arguments are addressed in turn.

"When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion." *State v. Wilkins,* 131 N.C. App. 220, 223, 506 S.E.2d 274, 276 (1998). "Competent evidence is evidence 'that a rea-

sonable mind might accept as adequate to support the finding.' " *Eley v. Mid/East Acceptance Corp. of N.C.*, 171 N.C. App. 368, 369, 614 S.E.2d 555, 558 (2005) (quoting *Andrews v. Fulcher Tire Sales & Serv.*, 120 N.C. App. 602, 605, 463 S.E.2d 425, 427 (1995)). The trial court's conclusions of law are reviewed de novo. *Wilkins*, 131 N.C. App. at 223, 506 S.E.2d at 276.

Defendant first argues that, in allowing the State to rebut the presumption of prejudice by showing that the misconduct was harmless beyond a reasonable doubt, the trial court did not apply the correct legal standard. Defendant contends that the juror misconduct violated Defendant's constitutional right to a jury of twelve. Defendant asserts that this was reversible error per se.

Defendant does not cite any authority for the proposition that juror misconduct is tantamount to a violation of his right to a jury of twelve, or that such error is reversible per se. Moreover, Defendant raised only the issue of his confrontation rights in his MAR. He raises a violation of his right to a jury of twelve for the first time on appeal. As such, Defendant has not preserved the issue of whether his right to a jury of twelve has been violated. See N.C. R. App. P. 10(a) (2010); *State v. Woodard*, 102 N.C. App. 687, 696, 404 S.E.2d 6, 11 ("The defendant may not change his position from that taken at trial to obtain a 'steadier mount' on appeal.") (quoting *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988)), *appeal dismissed, disc. review denied*, 329 N.C. 504, 407 S.E.2d 550 (1991).

[7] We now consider whether the trial court applied the correct standard to the constitutional violation Defendant has preserved.

A criminal defendant's right to confront the witnesses and evidence against him is guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, Section 23 of the North Carolina Constitution. A fundamental aspect of that right is that a jury's verdict must be based on *evidence produced at trial*, not on extrinsic evidence which has escaped the rules of evidence, supervision of the court, and other procedural safeguards of a fair trial.

*State v. Lyles*, 94 N.C. App. 240, 247, 380 S.E.2d 390, 394 (1989). The Court in *Lyles* held that the trial court erred by placing the burden of showing prejudice from such a violation on defendant. *Id.* at 248, 380 S.E.2d at 395. It went on to determine whether the evidence presented at the hearing established that the error was harmless beyond a reasonable doubt. *Id.* at 249, 380 S.E.2d at 395-96. The trial

STATE v. ARMSTRONG

[203 N.C. App. 399 (2010)]

court here properly placed the burden on the State to rebut the presumption of prejudice. It went on to determine whether the State demonstrated that the violation was harmless beyond a reasonable doubt. Thus, the trial court here applied the correct legal standard.

[8] Defendant next argues that the trial court's conclusion that the misconduct was harmless beyond a reasonable doubt is not supported by the record. Defendant challenges the trial court's findings of fact Nos. 8 and 14. The trial court found as a fact:

8. That Juror Breidenbach stated that on the second day of deliberations, Juror #4, Sarah Bumgarner, told the rest of the jurors that she had looked up the drug Narcan on the internet and that it had no effect on the body as to alcohol content. Juror Bumgarner did not tell the other jurors what website she read, who the author of the information was, what date the information was published, or any other details about the information.

Defendant alleges that no evidence supports the Trial Court's finding of fact No. 8 that Bumgarner did not share other details with jurors about the nature and content of the information she unlawfully researched. The following portion of Breidenbach's testimony is competent evidence to support the finding:

THE COURT: Where did she say this information came from?

MS. BREIDENBACH: The Internet.

THE COURT: Anything more specific than that?

MS. BREIDENBACH: No; . . .

Defendant also argues that the evidence does not support the trial court's finding of fact No. 14. The trial court there found:

14. That Defense counsel told the jury in his opening statement that the Defendant was given a drug called Narcan which increased his blood-alcohol level. The Defense presented no witnesses or other evidence to support the contention that Narcan increases a person's (or increased this Defendant's) blood-alcohol content. In fact, the State presented at least three witnesses who testified about the effects, or lack of effects, of Narcan. Paul Glover testified for the State that he had years of experience in the field of alcohol-testing of the breath and blood. Mr. Glover testified that Narcan has no effect whatsoever on the blood-alcohol level of a person. Mr. Glover listed the ingredients

of Narcan and noted that alcohol was not an ingredient. Medic Randall Burch testified for the State that Narcan has no effect on the blood-alcohol level of a person. Forensic chemist Jennifer Mills testified for the State that she had thirty years experience in the field and she had never seen, read, or heard anything about Narcan affecting a person's blood-alcohol level. All were cross-examined by the defense, and their testimony as to Narcan on cross-examination was consistent with their testimony on direct examination.

Defendant takes issue with that part of the finding that states that paramedic Burch testified that Narcan has no effect on the blood-alcohol level of a person, and that Mills testified that she had never seen, read, or heard anything about Narcan affecting blood-alcohol level. The following excerpt from Defendant's cross-examination is competent evidence to support the finding with regard to Mills:

Q: And you will acknowledge that indeed there could be medicines that could be given to the Defendant that could be injected or placed into his veins that could increase the blood/alcohol content of his blood, is that correct?

A: No, sir. I am not aware of that.

Q: I am not asking you if you are aware of it. I am asking you that there can be certain medicines that can be given that would increase the alcohol content of someone's blood?

A: In my opinion, I don't know of any.

While Burch testified that Narcan does not contain any alcohol, Defendant is correct that Burch did not say explicitly that Narcan has no effect on blood-alcohol level. It does not follow, however, that the trial court's disposition of the MAR was erroneous. We must determine whether this error affected the trial court's conclusions of law.

Defendant argues that the trial court's conclusion that the misconduct was harmless beyond a reasonable doubt is erroneous in law. The trial court concluded:

6. That there is no reasonable possibility that the mentioning of an internet finding by one juror, who gave no additional details about the information, such as the name of the website, the name of the author of the material, or the date of its publication, could . have had an effect on the hypothetical "average juror." Even if all of the omitted information had been shared, there is no reason-

able possibility that this extraneous information could have had an effect on the average juror in light of the overwhelming evidence presented by the State on the issue of Narcan and its lack of effect on a person's blood-alcohol level and in light of the lack of any evidence to the contrary. Further, the evidence of the defendant's guilt was overwhelming. Therefore, the State has shown that this constitutional violation was harmless beyond a reasonable doubt. The defendant is not entitled to a new trial or any other relief based on this allegation.

Defendant asserts that the State's evidence that Narcan has no effect on a person's blood-alcohol level was not overwhelming. Although Defendant is correct that Glover's testimony should not have been allowed, we have determined above (in section V) that Glover's testimony was cumulative of other admissible evidence. Other evidence showed that Narcan has no effect on blood-alcohol content. Defendant apparently does not disagree that there was a "lack of any evidence to the contrary."

Defendant argues vigorously that the evidence was not overwhelming, either with regard to his guilt or to the issue of Narcan in particular. We do not consider this determination dispositive.[3] The question is whether Defendant was prejudiced by a violation of his right to have evidence presented at his trial. *Lyles*, 94 N.C. App. at 247, 380 S.E.2d at 394. In light of the evidence presented by the State's witnesses on the issue of Narcan's effects and the lack of Defendant's evidence to the contrary, there is no reasonable possibility that the extraneous information could have had an effect on the average juror. We hold that the trial court did not err in its conclusion of law. The trial court's denial of Defendant's Motion for Appropriate Relief is affirmed.

No prejudicial error at trial.

Denial of Defendant's MAR affirmed.

Chief Judge MARTIN and Judge STEPHENS concur.

---

3. It is moreover beyond the scope of our review. "Questions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts." *Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994).