STATE OF NORTH CAROLINA v. ROBERT LANE WISE

No. 161PA89

(Filed 5 April 1990)

1. **Criminal Law §§ 65, 86.8 (NCI3d) — rape counselor — description of victim as genuine — no improper comment on credibility**

    A counselor's response of "genuine" to a question asking her to describe an alleged child rape victim while she was telling her story during counseling sessions was not a comment upon the credibility of the victim which violated N.C.G.S. § 8C-1, Rules 405(a) and 608(a) but was merely a description of the witness's personal observation of the victim's emotional state during counseling sessions.

    **Am Jur 2d, Expert and Opinion Evidence § 191; Rape § 68.**

2. **Witnesses § 8.4 (NCI3d) — disallowance of argumentative question — prevention of witness harassment — impeachment by inconsistent statement not denied**

    Defense counsel's question to an alleged rape victim, "So what you're saying earlier wasn't true?" was an argumentative restatement of counsel's previous question, and the trial court's sustention of the State's objection thereto was within the court's discretion to prevent harassment of witnesses and did not violate defendant's constitutional right to impeach the witness through questioning about prior inconsistent statements. N.C.G.S. § 8C-1, Rule 611(a).

    **Am Jur 2d, Witnesses §§ 507, 596, 629.**

3. **Constitutional Law § 30 (NCI3d) — rape case — failure to disclose examination results — knowledge by defense counsel — due process**

    The State did not withhold exculpatory evidence in violation of a rape defendant's due process rights by failing to offer the testimony of the doctor who first examined the child victim or to disclose the results of his examination where the record shows that defense counsel had a copy of a report of an examination of the victim by a second doctor which referred to a prior pelvic examination of the victim by another doctor, and that defense counsel knew the name of the doctor

STATE v. WISE

[326 N.C. 421 (1990)]

who performed the first examination and thus could have subpoenaed him.

**Am Jur 2d, Criminal Law § 1010; Rape § 63.**

4. **Criminal Law § 51 (NCI3d); Rape and Allied Offenses § 4 (NCI3d) — characteristics of abused children — testimony by counselor — absence of formal finding of qualification as expert**

The trial court's overruling of defense counsel's objection to opinion testimony by a professional counselor concerning the characteristics of abused children constituted an implicit finding that the witness was an expert where defendant never requested a specific finding by the trial court as to the witness's qualifications as an expert, and evidence before the court that the witness possesses a master's degree in education and counseling, is a nationally certified and registered counselor, and has received extensive training and clinical experience in the field of sexually abused children was sufficient to support a finding that the witness was qualified to testify as an expert in the characteristics of abused children. Furthermore, there was no need for the court to make a formal ruling that the witness was an expert because evidence of the nature of her job and of the experience she possessed affirmatively showed that she was better qualified than the jury to form an opinion and testify about the characteristics of abused children.

**Am Jur 2d, Expert and Opinion Evidence §§ 180, 181.**

5. **Criminal Law § 686 (NCI4th) — failure to record charge conference — absence of prejudice**

Defendant failed to show material prejudice from the trial court's failure to record the charge conference, N.C.G.S. § 15A-1231(b), where the record shows that the trial judge advised that he would make the standard charge to the jury, neither side had any special request for instructions, and both sides indicated that they were satisfied with the charge as given and did not have any corrections or additions.

**Am Jur 2d, Criminal Law § 880; Trial §§ 573-575.**

6. **Constitutional Law § 66 (NCI3d) — charge conference — absence of defendant — harmless error**

Error, if any, in holding the charge conference outside the presence of defendant was harmless where defendant made

no request to attend the charge conference; defendant's counsel was present during the conference, and the trial court announced the proposed instructions on the record and gave defense counsel the opportunity to be heard; and defendant was present when the actual charge was given to the jury and did not object to its contents.

**Am Jur 2d, Criminal Law § 916.**

7. **Criminal Law § 685 (NCI4th); Rape and Allied Offenses § 6 (NCI3d) — instructions — inference from absence of medical report — ease of bringing sexual charges — failure to make request**

The trial court in a rape case did not err in failing to charge the jury that it should infer from the State's failure to produce the results of the first medical examination of the child victim that this evidence was not favorable to the State's position or in failing to charge on the ease of bringing charges of sexual misconduct where defense counsel submitted no request for special instructions, failed to object to the charge given, and stated that he had no request for additional instructions. Furthermore, the State's failure to present evidence of the first examination of the victim would not support an inference that such evidence would have been unfavorable to the State's case in light of the fact that defendant had an equal opportunity to call the doctor who performed the examination but apparently failed to do so because his findings corroborated those of a second doctor who examined the victim and testified for the State. N.C.G.S. § 15A-1231(a); Appellate Rule 10(b)(2).

**Am Jur 2d, Rape §§ 108, 109.**

ON appeal and discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 93 N.C. App. 305, 377 S.E.2d 769 (1989), setting aside a judgment entered by *Collier, J.*, in Superior Court, CABARRUS County, on 19 January 1988 and awarding defendant a new trial. Heard in the Supreme Court 12 December 1989.

STATE v. WISE

[326 N.C. 421 (1990)]

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State-appellant.*

*Cruse and Spence, by Thomas K. Spence and Kenneth B. Cruse, for defendant-appellee.*

MEYER, Justice.

On 5 October 1987, the Grand Jury of Cabarrus County returned two bills of indictment against defendant, one charging first-degree rape occurring on 14 June 1986 and the other charging the same offense occurring on 30 May 1987. The cases were consolidated for trial, and the jury found defendant guilty only of the rape occurring on 14 June 1986. The trial judge imposed a mandatory life sentence. Defendant appealed to the Court of Appeals, which concluded that the trial court improperly admitted expert opinion testimony and ordered a new trial on that basis. This Court granted the State's petition for discretionary review on 4 May 1989. In the appellee's response to the State's petition for discretionary review, eight additional points of error were assigned as cross-assignments of error for consideration by this Court. These errors had been raised by the appellee before the Court of Appeals and were summarily overruled by that court. For reasons stated subsequently, we review these cross-assignments of error.

The State's evidence tended to show that on 14 June 1986 defendant, the victim's stepuncle and neighbor, asked the victim, an eleven-year-old girl, to come to his home to baby sit his young son. When she arrived, he asked her to accompany him to a warehouse to help him pick up something. After they had obtained the item and had walked to one end of the warehouse, the victim fell. At that point, defendant held her down on the floor, took off her shorts, and proceeded to engage in sexual intercourse with her. The victim also testified, not to the jury's satisfaction, that the defendant again raped her in the warehouse on 30 May 1987. In June or July of 1987, the victim confided in her pastor's wife and told her of the incidents. The pastor's wife in turn informed the victim's mother of the incidents. Defendant was subsequently charged with two counts of rape. His defenses to both charges were denial and alibi.

The victim was examined by two doctors, Dr. Furr and Dr. Oliver, both of whom indicated that her vagina had been sexually penetrated. Dr. Oliver testified at trial regarding his physical ex-

amination of the child. Gail Mason, a professional counselor who worked with the victim during the investigation of the case, also testified for the State. Her testimony formed the basis for the holding of the Court of Appeals and is the subject of the State's present assignment of error.

[1] Mason testified with regard to what the victim told her in counseling sessions concerning the two alleged incidents. During the course of the direct examination, the following exchange took place between the prosecutor and the witness:

A. . . . [The victim] was referred to me through victims' assistance. I was in a counseling—that was the way I perceived it, as far as a counseling endeavor.

Q. Now ma'am, could you describe her emotionally when she was telling you these things during these counseling sessions?

A. Genuine.

[DEFENSE ATTORNEY]: Objection.

A. Emotionally. Emotional. Not extremely emotional as far as crying, not furious, anger, related the story, there were tears, there was sadness, but not extreme.

Q. What else did you note about her emotionally when she told you these things?

A. That she was hurting inside and feeling very guilty.

We note at the outset that defendant's objection is not properly preserved and that it came after the witness' answer and was not followed by a motion to strike. When an objection is not timely made, it is waived. *State v. Banks*, 295 N.C. 399, 245 S.E.2d 743 (1978). We nevertheless elect to address this issue.

In its opinion, the Court of Appeals held that the word "genuine" in response to the question asking the witness to describe the victim emotionally amounted to an expert opinion that the victim was telling the truth and therefore violated Rules 405(a) and 608(a) of the North Carolina Rules of Evidence. Because we are convinced that the answer was not a comment upon the credibility of the victim, but was rather a description of the witness' observation of the victim's emotional state during the counseling session, we reverse the holding of the Court of Appeals and remand the case for reinstatement of the judgment of the trial court.

STATE v. WISE

[326 N.C. 421 (1990)]

The law in this state with regard to the scope of expert opinion testimony as to a witness' credibility is well settled. Rule 405(a) of the North Carolina Rules of Evidence, which governs methods of proving character, provides in part that "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." Rule 608(a) addresses impeachment and rehabilitation of a witness' credibility and provides that "[t]he credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a)." The reference to Rule 405(a) was inserted in this rule to make it clear that expert testimony as to the credibility of a witness is not admissible. *State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986), *appeal on remand*, 322 N.C. 818, 370 S.E.2d 676 (1988). As the Court of Appeals pointed out below, this Court has prohibited expert opinion testimony as to the credibility of a witness on more than one occasion.

In *State v. Heath*, 316 N.C. 337, 341 S.E.2d 565 (1986), this Court held that the trial court erroneously permitted the prosecutor to pose a question to an expert in clinical psychology regarding whether the thirteen-year-old victim was suffering from a mental condition which might cause her to fabricate a story about an alleged sexual assault. This Court further concluded that it was error for the trial court to permit the expert witness to testify that "[t]here is nothing in the record or current behavior that indicates that [the victim] has a record of lying." *Id.* at 340, 341 S.E.2d at 567.

In *State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76, this Court held that the following examination of an expert pediatrician was improper:

"Q. . . . [D]id you form an opinion about whether [the victim] was believable or not?

"      . . . .

"A. I think she's believable."

*Id.* at 599, 350 S.E.2d at 81.

In *State v. Kim*, 318 N.C. 614, 350 S.E.2d 347 (1986), this Court concluded that the following testimony was an improper expression of expert opinion on the credibility of a witness:

"Q. Dr. Barnette, as you evaluated and treated [the victim], did you ever find her untruthful with you?

"[DEFENSE COUNSEL]: OBJECTION.

"COURT: OVERRULED.

"A. She's never been untruthful with me about it. Everything she had to say to me somehow I'd find out later that she was telling the truth."

*Id.* at 619-20, 350 S.E.2d at 350-51.

However, we are not convinced that the testimony at issue in the case *sub judice* falls within the Rules' prohibitions as illustrated by the above examples. When asked to "describe her [the victim] emotionally" while she was telling her story during the counseling sessions, the witness responded, "Genuine." The witness was testifying that the emotions of the victim during the counseling session were genuine emotions. The victim was described as tearful and sad, but not angry or overly distraught. The witness was not testifying that she believed what the victim told her was true, nor did she give her opinion as to the victim's character for truthfulness in general. She merely described her personal observations concerning the emotions of the victim during the counseling sessions.

Such a response is proper under this Court's decision in *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987). In that case, a psychologist testified that a victim responded on a psychological test in an " 'honest fashion . . . admitting that she was in a fair amount of emotional distress.' " *Id.* at 30, 357 S.E.2d at 365. This Court held:

We do not consider the testimony of this witness . . . to be an expert opinion as to [the victim's] character or credibility. It was merely a statement of opinion by a trained professional based upon personal knowledge and professional expertise that the test results were reliable because the victim seemed to respond to the questions in an honest fashion . . . . By this answer [the doctor] was not saying that she believed the victim to be truthful, but rather that she gave truthful answers to the test questions.

*Id.* at 31, 357 S.E.2d at 366.

STATE v. WISE

[326 N.C. 421 (1990)]

The Court concluded in that case that "[t]he mental and emotional state of the victim before, during, and after the offenses as well as her intelligence, although not elements of the crime, are relevant factors to be considered by the jury in arriving at its verdicts." *Id.* at 30-31, 357 S.E.2d at 366.

We have reviewed the transcript of this witness' testimony and we are convinced that the counselor's response to the prosecutor's question was merely a description of her observation of the victim's emotional state during the sessions. We therefore hold that the Court of Appeals erred in granting defendant a new trial on this basis, and the decision of that court is reversed.

Because this holding has the effect of reinstating defendant's sentence, we now review his cross-assignments of error to determine if they have merit. Our review of the record reveals that defendant, as appellee, has properly preserved these questions in his response to the State's petition for discretionary review under the provisions of Rule 15(d) of the North Carolina Rules of Appellate Procedure. This Court has recognized that allowing cross-assignments of error "provides protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based." *Carawan v. Tate,* 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982). We have conducted a thorough review of the record and the briefs, and, for the reasons stated below, we conclude that defendant received a fair trial free of prejudicial error.

[2] Defendant first assigns error to the trial court's decision to sustain a State objection to defense counsel's questioning of the victim regarding a prior inconsistent statement. During her direct examination, the victim testified that she periodically visited defendant's home because she received attention from defendant that she did not get at home. Later, she testified that she was in fact getting attention at home. During cross-examination of the witness, defense counsel attempted to ask her whether her earlier statement was true, and the trial court sustained the State's objection to this question.

Defendant contends that it was his constitutional right to impeach the witness through questioning about prior inconsistent statements. The State responds that its objection was properly

sustained because the question was argumentative and because the ruling was within the trial court's discretion to prevent harassment of witnesses. We agree. Rule 611(a) of the North Carolina Rules of Evidence provides that the trial court shall have complete discretion to control the trial and to protect witnesses from harassment. The question at issue here, "So what you're saying earlier wasn't true?" was an argumentative restatement of counsel's previous question. The court sustained no other objections by the State. We perceive no abuse of discretion in the trial court's ruling. We therefore reject this assignment of error.

[3] Defendant's next assignment of error relates to the prosecutor's failure to disclose the results of the first medical examination performed on the victim. It is well established under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), that the federal constitutional guarantee of due process requires that the State disclose to a criminal defendant exculpatory evidence within its knowledge or possession. This rule applies regardless of whether there has been a specific request for the evidence. *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976).

Drs. Furr and Oliver examined the prosecuting witness. While the State presented the testimony of Dr. Oliver, it neither disclosed nor presented the results of Dr. Furr's examination, which was performed prior to Dr. Oliver's examination. Defendant contends that because the State did not offer the results of that examination, it can be inferred that they were exculpatory and that defendant is therefore entitled to a new trial.

The State counters that the *Brady* mandate applies only to exculpatory information of which the defendant has no knowledge. In this case, the trial transcript reveals that defense counsel was aware of Dr. Furr's examination and the results thereof. During cross-examination, defense counsel asked the victim whether she was examined by Dr. Furr, and she responded affirmatively. Further, defense counsel had a copy of Dr. Oliver's report, which set out the victim's history, including the fact that she had been examined by a doctor who had also performed a pelvic examination prior to Dr. Oliver's examination.

Because defense counsel had in his possession a copy of Dr. Oliver's report and because defense counsel knew the name of the other physician, Dr. Furr, defendant has failed to make a showing that the State withheld exculpatory evidence by failing to offer

either Dr. Furr's testimony or the results of his examination. Defendant could have subpoenaed Dr. Furr to testify at trial. We reject this assignment of error.

[4] Defendant next contends that the trial court erred in allowing Gail Mason, the counselor, to testify as an expert when in fact she was never properly qualified as an expert. Initially, Mason was not offered by the State as an expert witness, and it was not until redirect examination of Mason by the State that defense counsel objected to testimony that she gave that constituted an expert opinion:

> A. Children, if sexual abuse occurs at an early age, even before this incident, and they grow up in disfunctional families or environments, the reason she would go back to a situation, if indeed it did happen, the reason the child would go back to that —
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object, this is an opinion —
>
> A. It's not an opinion, it's a fact. After a lot of study. It's a fact.
>
> THE COURT: She's entitled as an expert.
>
> [DEFENSE COUNSEL]: I don't think she's been qualified as an expert.
>
> [PROSECUTOR]: I tender her.
>
> THE COURT: You wish to cross-examine her as to her qualifications?

On recross-examination, defense counsel questioned Mason as to her qualifications and then renewed his objection. This objection was overruled. Defendant points out that at no time did the trial court rule on the prosecutor's tender or make a finding that Mason qualified as an expert and that such omission constituted reversible error.

The State counters, and we agree, that the trial court's overruling of defense counsel's objection to the opinion testimony constituted an implicit finding that the witness was an expert. We find our holding in *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984), instructive on this issue. In that case, we held that the trial court did not err in permitting an anthropologist to testify as an expert in bare footprint comparison, where the trial judge

implicitly found that the witness was qualified when he overruled defense counsel's objection to the State's offer of the witness as an expert in the comparison of footprint impressions and where there was evidence to support a finding by the trial judge that the witness was qualified to testify as an expert in footprint comparison.

In the instant case, as in *Bullard*, defendant interposed only general objections to the testimony which is the subject of this assignment of error. He never requested a specific finding by the trial court as to the witness' qualifications as an expert. In the absence of such a request, a finding that the witness is qualified as an expert is implicit in the trial court's ruling admitting the opinion testimony. *State v. Perry*, 275 N.C. 565, 169 S.E.2d 839 (1969).

We further hold that there was no need for the court to make a formal ruling that the witness was an expert because her qualifications had already been presented to the court. In *State v. Aguallo*, 322 N.C. 818, 370 S.E.2d 676 (1988), this Court held that the trial court properly admitted testimony of a law enforcement officer and a Department of Social Services worker who gave opinions as to characteristics of abused children. The Court found that "[i]t is evident that the nature of their jobs and the experience which they possessed made them better qualified than the jury to form an opinion as to the characteristics of abused children." *Id.* at 821, 370 S.E.2d at 677. That Court relied on *State v. Phifer*, 290 N.C. 203, 225 S.E.2d 786 (1976), *cert. denied*, 429 U.S. 1123, 51 L. Ed. 2d 573 (1977), in which two agents for the State Bureau of Investigation who had not been formally qualified as experts were nevertheless permitted to give their opinions concerning a gun residue test because the nature of their jobs and their experience made them better qualified than the jury to form an opinion on this matter.

Similarly, the evidence of the nature of Mason's job and of the experience which she possesses affirmatively shows that she was better qualified than the jury to form an opinion as to, and to testify about, the characteristics of abused children. She possesses master's degrees in education and counseling, she is a nationally certified and registered counselor, and she has received extensive. training and clinical experience in the field of sexually abused children. We conclude that this litany of qualifications supports

STATE v. WISE

[326 N.C. 421 (1990)]

the trial court's decision to permit her to testify as an expert and that the court did not abuse its discretion in this regard.

Assuming arguendo that the trial court's failure to formally qualify the witness as an expert was error, it was harmless error in light of the evidence of her qualifications, the court's obvious conviction that the witness was an expert, and the fact that the witness' opinion testimony fit within the definition of expert testimony. It is undisputed that expert testimony is properly admissible when such testimony can assist the jury in drawing certain inferences from the facts because the expert is better qualified. The trial judge is afforded wide latitude and discretion when making a determination about the admissibility of such testimony. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370. Defendant's assignment of error is rejected.

[5] Defendant next assigns error to the trial court's failure to record the charge conference. N.C.G.S. § 15A-1231(b) provides that "[b]efore the arguments to the jury, the judge must hold a recorded conference on instructions out of the presence of the jury." Defendant concedes that the statute also requires a showing of prejudice in order for the failure to comply fully with this subsection to constitute grounds for appeal, but contends that, because the unrecorded charge conference prevented him from presenting any errors occurring during the conference, he was unable to obtain effective appellate review. Defendant contends that this is a proper basis for granting him a new trial.

The State submits that the record shows that at the conclusion of all of the evidence, the judge advised that he would make the standard charge to the jury and that neither side had any special request for instructions. At the conclusion of the instructions to the jury and before sending the jury the verdict sheet, the court inquired of counsel whether either side had additions or corrections they wished to make. Both sides indicated that they were satisfied with the charge. Defendant therefore cannot show material prejudice, as required by the statute, from the failure to record the charge conference. We agree with the State and reject defendant's assignment of error.

[6] Defendant also asserts that the charge conference was flawed because it was held outside of the presence of defendant, thus violating his constitutional right to be present at all stages of his trial. The State responds that because defendant was not ex-

cluded from the charge conference and did not request to be present and because his attorney attended it and made no objection to the procedure, defendant waived his right to attend the conference. The State further contends that the charge conference only pertained to matters of law and did not take place in front of the jury; therefore, defendant's absence was not prejudicial error.

In *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985), the trial court conducted a *voir dire* hearing on the admissibility of certain testimony outside the presence of both the jury and the defendant. This Court held that defendant's constitutional right to be present at all stages of the trial was a purely personal right that could be waived expressly or by his failure to assert it. The Court concluded that defendant waived his right to be present because he knew or should have known that a hearing would be held, because neither defendant nor his counsel asserted his right to attend, and because his counsel was present at the hearing. The Court further held that any error made was harmless in light of the fact that defendant was present when the testimony was presented to the jury.

We find *Braswell* dispositive and conclude that, under these similar circumstances, error, if any, in excluding defendant from the charge conference was harmless. The right to be present at all critical stages of the prosecution is subject to harmless error analysis. *Rushen v. Spain*, 464 U.S. 114, 78 L. Ed. 2d 267 (1983), *reh'g denied*, 465 U.S. 1055, 79 L. Ed. 2d 730 (1984); *Braswell*, 312 N.C. 553, 324 S.E.2d 241. Defendant's counsel was present during the conference, and the trial court subsequently announced the proposed instructions on the record and gave defense counsel the opportunity to be heard. Furthermore, defendant was present when the actual charge was given to the jury and did not object to its contents. We hold that this assignment of error has no merit, and it is rejected.

[7] Finally, defendant contends that the trial court erred in failing to charge the jury that it should infer from the State's failure to produce the medical examination performed by Dr. Furr that this evidence was not favorable to the State's position. Defendant asserts that the trial court also erred in failing to instruct on the ease of bringing charges of sexual misconduct. We disagree with both contentions.

N.C.G.S. § 15A-1231(a) provides that if special instructions are desired, they should be submitted in writing to the trial judge. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides that if a party fails to object to a jury charge before the jury retires to consider its verdict, the objection is waived. *State v. Horner*, 310 N.C. 274, 311 S.E.2d 281 (1984). Furthermore, in the case *sub judice*, before allowing the jury to begin its deliberations, the trial judge announced that he would consider any requests for corrections to the charge "or any additional matters that either of you feel are necessary or appropriate to submit a proper and accurate charge to the jury." Defense counsel replied that he had none. We further note that the State's failure to present evidence regarding Dr. Furr's examination would not have enabled the jury to draw the inference that the doctor's testimony would have been unfavorable to the State's case in light of the fact that defendant had an equal opportunity to call Dr. Furr but apparently did not because his findings corroborated those of Dr. Oliver.

In conclusion, we hold that defendant received a fair trial free of prejudicial error, and we reverse the decision of the Court of Appeals in which defendant was granted a new trial. The case is remanded to that court for further remand to the Superior Court, Cabarrus County, for reinstatement of the sentence of mandatory life imprisonment imposed by the trial judge.

Reversed.