IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-413

 Filed: 21 November 2017

Guilford County, No. 15 CRS 72481-85

STATE OF NORTH CAROLINA

 v.

DARIS LAMONT SPINKS

 Appeal by defendant from judgments entered 26 May 2016 by Judge Richard

L. Doughton in Guilford County Superior Court. Heard in the Court of Appeals 4

October 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Jennie
 W. Hauser and Assistant Attorney General Michael E. Bulleri, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Andrew
 DeSimone, for defendant-appellant.

 TYSON, Judge.

 Daris Lamont Spinks (“Defendant”) appeals from judgments entered upon jury

verdicts convicting him of two counts of statutory sexual offense, one count of

statutory rape, and two counts of indecent liberties. We find no error in Defendant’s

convictions. We dismiss Defendant’s appeal of the trial court’s order on lifetime

satellite based monitoring (“SBM”) without prejudice.

 I. Factual Background

 A. State’s Evidence
 STATE V. SPINKS

 Opinion of the Court

 The State’s evidence tended to show the victim (“Amy”) and Defendant knew

each other through Amy’s older sister, Alexis, for a period of about five years. When

Amy’s sister had her own apartment, Amy would visit and Defendant would bring his

10-year old daughter over. Amy testified at one of these visits Defendant attempted

to pull her pants down and put his lips to her bottom to make a noise.

 Amy testified Defendant and her sister had a baby daughter together. She

testified Defendant, Alexis and their baby daughter stayed at Amy’s house twice in

December 2014. Amy was 13 years old at this time. Around 1:00 a.m. on the first

night, Defendant entered Amy’s room and threated to harm her if she said anything.

Defendant pulled down her pants and touched her buttocks, stomach, and breasts.

Defendant then engaged in vaginal intercourse with Amy. Amy pushed him away.

Defendant then performed cunnilingus upon her. Amy told him to stop, but he

continued. Defendant told Amy if she told anyone, his child would be taken away,

and he would hurt Amy or have someone else hurt her.

 The next time Defendant stayed at Amy’s house in December 2014, Amy set

up a computer tablet in her room to record any other incidents which may occur.

Defendant entered Amy’s room during the night and threatened to hurt her.

Defendant again engaged in vaginal intercourse with and performed cunnilingus on

Amy. He left Amy’s room when his child began to cry in another room. Amy told

Defendant the following morning that she had recorded him. Defendant repeated to

 -2-
 STATE V. SPINKS

 Opinion of the Court

Amy that his child would be taken away if she told anyone. He told Amy he would

kill her.

 Several days later, Defendant gave Amy a new pair of Nike shoes. Defendant

told her the shoes were provided for her to “shut up” and to delete the video. Amy

deleted the video, while in front of Defendant, and accepted the shoes.

 Amy told Defendant sometime in mid-January she was going to report the

incidents. Soon thereafter, a rock was thrown through her window in the middle of

the night. Defendant came to Amy’s house the following day to look at the window.

While Defendant was in the home, Amy told him she was going to tell someone about

his assaults. Amy testified Defendant told her he was going to kill her.

 A few days later, Amy told her mother that Defendant had sexually assaulted

her in December. Amy, her mother, and brother went to the police department two

days later to report the sexual assaults.

 Dr. Stacy Thomas testified she had practiced as a pediatrician for over ten

years. Dr. Thomas estimated she has examined over 500 child victims of alleged

sexual abuse. Dr. Thomas was qualified as an expert witness in pediatrics, especially

the evaluation and treatment of physically and sexually abused children. She was

admitted to testify as an expert witness without Defendant’s objection.

 Dr. Thomas testified she physically examined Amy on 16 March 2015. Prior

to the examination, Dr. Thomas was briefed about the contents of an interview of

 -3-
 STATE V. SPINKS

 Opinion of the Court

Amy by Greensboro Police Detective Hines. Detective Hines told Dr. Thomas that

Amy had disclosed one act of cunnilingus and one act of vaginal intercourse by

Defendant. Dr. Thomas testified Amy exhibited symptoms “consistent with

depression and anxiety.” Amy’s physical examination revealed she was in good

physical health, and her external genital and anal exams were normal. During Amy’s

exam, Amy became hysterical, cried and shook.

 Dr. Thomas compiled her findings into a report after completing her

examination of Amy. This report was admitted into evidence without Defendant’s

objection.

 The State offered the testimony of child witness (“Katy”) over Defendant’s Rule

404(b) and Rule 403 objections. Katy testified she was six years old in 2011. Katy

testified she went to her friend’s birthday party, where Defendant and Defendant’s

daughter also attended. Katy testified the party included a sleep over. Katy testified

Defendant opened the door to the bedroom during the night where she and her friend

slept, but closed it after both girls woke up. Katy testified someone had later entered

into the room and engaged in anal intercourse with her. Katy identified Defendant

as the person who had sexually assaulted her. After the assault, Defendant told Katy

to be quiet and he would give her a dollar. Katy testified the next morning Defendant

gave her a dollar.

 B. Defendant’s Evidence

 -4-
 STATE V. SPINKS

 Opinion of the Court

 Keisha Oats, testified Defendant was her nephew. Ms. Oats testified

Defendant, Alexis, their baby, and Alexis’ sister, Amy, visited at her home on

Christmas Eve 2014. Ms. Oats testified Defendant and the others left her home

around 1:30 am.

 Defendant testified when they left Ms. Oats home on Christmas Eve, he,

Alexis, their baby and Amy went to Amy’s mother’s home, where he and Alexis had

cooked and wrapped presents. Defendant denied performing any sexual acts upon

Amy in December of 2014 and January of 2015, threatening Amy in December of 2014

and January of 2015, and going to Amy’s home on New Year’s Eve 2014 and giving

Amy a pair of shoes.

 Defendant testified he found out about Amy’s allegations after the Super Bowl

in February and Detective Hines had contacted him soon thereafter. Defendant met

with Detective Hines and denied the allegations. Defendant also denied the

allegations against him by Katy. Defendant admitted he had stayed overnight at

Amy’s home on Christmas Eve and on another night around Thanksgiving of 2014.

 The jury returned verdicts finding Defendant guilty of two counts of statutory

sexual offense of a person who was thirteen years old, one court of statutory rape of

a person who was thirteen years old, and two counts of indecent liberties. The trial

court sentenced him to two consecutive terms of 280 to 396 months in prison, and

ordered lifetime sex offender registration and SBM. Defendant appeals.

 -5-
 STATE V. SPINKS

 Opinion of the Court

 II. Jurisdiction

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015)

and N.C. Gen. Stat. § 15A-1444 (2015).

 III. Issues

 Defendant asserts three issues on appeal: (1) testimony from Katy concerning

a previous alleged assault was improperly admitted under Rule 404(b) and unfairly

prejudicial to him under Rule 403; (2) the trial court committed plain error by

admitting Dr. Thomas’ expert diagnosis and opinions, and he received ineffective

assistance of counsel on this matter; and (3) the trial court erred by ordering

Defendant to a lifetime registration on the sexual offender registry and SBM.

 IV. Katy’s Testimony

 Defendant contends the trial court erred in admitting testimony from Katy

under Rule 404(b). He argues the alleged acts at issue were different, the children

were of significantly different ages, the circumstances surrounding the alleged

assaults were different in nature, and the circumstances following each of the alleged

acts were different.

 A. Standard of Review

 Our Supreme Court has held:

 when analyzing rulings applying Rules 404(b) and 403, we
 conduct distinct inquiries with different standards of
 review. When the trial court has made findings of fact and
 conclusions of law to support its 404(b) ruling. . . we look to

 -6-
 STATE V. SPINKS

 Opinion of the Court

 whether the evidence supports the findings and whether
 the findings support the conclusions. We review de novo
 the legal conclusion that the evidence is, or is not, within
 the coverage of Rule 404(b). We then review the trial court’s
 Rule 403 determination for abuse of discretion.

State v. Beckelheimer, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

 “A trial court may be reversed for an abuse of discretion only upon a showing

that its ruling was so arbitrary that it could not have been the result of a reasoned

decision.” State v. Hayes, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citation

omitted).

 B. Analysis

 1. Rules 401 and 402

 “‘Relevant evidence’ means evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence.” N.C. Gen. Stat. §

8C-1, Rule 401 (2015). “All relevant evidence is admissible.” N.C. Gen. Stat. § 8C-1,

Rule 402 (2015).

 2. Rule 404(b)

 Our Supreme Court has held “a careful reading of Rule 404(b) clearly shows,

evidence of other offenses is admissible so long as it is relevant to any fact or issue

other than the character of the accused.” State v. Weaver, 318 N.C. 400, 403, 348

 -7-
 STATE V. SPINKS

 Opinion of the Court

S.E.2d 791, 793 (1986) (citing 1 Brandis on North Carolina Evidence § 91 (2d rev. ed.

1982)).

 The rule lists numerous purposes for which evidence of
 prior acts may be admitted, including motive, opportunity,
 intent, preparation, plan, knowledge, identity, or absence
 of mistake, entrapment or accident. This list is not
 exclusive, and such evidence is admissible as long as it is
 relevant to any fact or issue other than the defendant’s
 propensity to commit the crime. In addition, this Court has
 been markedly liberal in admitting evidence of similar sex
 offenses by a defendant.

Beckelheimer, 366 N.C. at 130, 726 S.E.2d at 159 (internal citations and

quotation marks omitted).

 North Carolina courts have interpreted Rule 404(b) as a rule of inclusion, not

exclusion. Id. at 131, 726 S.E.2d at 159. This inclusion is constrained by the

requirements of similarity and temporal proximity of the evidence of the acts. State

v. Al-Bayyinah, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002).

 Rule 404(b) is “subject to but one exception requiring the exclusion of evidence

if its only probative value is to show that the defendant has the propensity or

disposition to commit an offense of the nature of the crime charged.” State v. Lyons,

340 N.C. 646, 668, 459 S.E.2d 770, 782 (1995) (emphasis original) (citation omitted).

 The record indicates the State offered Katy’s testimony to establish Defendant

had a common scheme or plan to commit assaults upon young females. The trial

court determined Katy’s testimony to be “very similar to what the allegations are in

 -8-
 STATE V. SPINKS

 Opinion of the Court

this case” and “if [the State] [is] offering to show there is an existence in the mind of

the defendant, a common scheme or plan in the crime involved and the charge in this

case, I think it’s admissible.”

 Defendant argues the allegations are too dissimilar to show a common scheme

or plan. Defendant relies upon State v. Gray, which found the proffered 404(b)

evidence was not “substantial evidence tending to support a reasonable finding by

the jury that the defendant committed [a] similar act.” State v. Gray, 210 N.C. App.

493, 512, 709 S.E.2d 477, 490-91 (2011) (emphasis original) (citations and quotations

omitted). In Gray, the defendant engaged in forcible anal intercourse with a young

boy at night and later sexually assaulted a young girl by inserting his finger into the

girl’s vagina during daylight hours. Id. at 511-12, 709 S.E.2d at 490. The defendant

was a guest in the home where each child victim was staying. Id. at 512, 709 S.E.2d

at 490.

 This Court held the similarities in the two acts “show little more than that the

alleged perpetrator of both acts was attracted to young children, and that he used the

fact that he was a welcome guest in the house where each child was staying to find

time alone with that child in order to commit the assaults.” Id. This Court recognized

“[t]hese facts are all too common in cases involving sexual assaults on minors by an

adult.” Id.

 -9-
 STATE V. SPINKS

 Opinion of the Court

 The case and incidents before us are distinguishable from Gray. Amy and

Katy are of the same sex; Defendant allegedly had forcible intercourse with both of

them; and the assaults took place during the early hours of the morning. In addition

to these factors, here Defendant was a guest in the home where each child was

staying, entered their bedrooms well after midnight, and later bribed both victims for

their silences.

 “Our case law is clear that near identical circumstances are not required;

rather, the incidents need only share some unusual facts that go to a purpose other

than propensity for the evidence to be admissible.” Beckelheimer, 366 N.C. at 132,

729 S.E.2d at 160 (citation and quotations omitted).

 Here, Katy’s testimony tended to prove Defendant had a common scheme or

plan to have (1) intercourse; (2) with young female children who were asleep; (3) at

night; (4) while he was a guest staying overnight in a home; and (5) offered a bribe to

his victims afterwards to buy their silence. The trial court correctly concluded that

Katy’s testimony was offered to show a purpose other than simply Defendant’s

propensity to commit the crimes.

 [E]ven though evidence may tend to show other crimes,
 wrongs, or acts by the defendant and his propensity to
 commit them, it is admissible under Rule 404(b) so long as
 it also is relevant for some purpose other than to show that
 defendant has the propensity for the type of conduct for
 which he is being tried.

 - 10 -
 STATE V. SPINKS

 Opinion of the Court

State v. Bagley, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (emphasis original)

(citation and quotations omitted).

 The purpose of the evidence was relevant to show the common scheme or plan

held by Defendant, although this evidence may also tend to show Defendant’s

propensity to commit sexual assaults. See id. (“evidence may tend to show other

crimes, wrongs, or acts by the defendant and his propensity to commit them . . . .”).

 Record evidence demonstrates the trial court’s admission of the 404(b) evidence

was not arbitrary or the result of an unreasoned decision. We find no error in the

admission of Katy’s testimony under Rule 404(b).

 3. Rule 403

 Admissible evidence under Rule 404(b) must also meet the criteria of Rule 403.

“Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence.” N.C. Gen. Stat. § 8C-1, Rule 403 (2015). Otherwise

admissible evidence, whose probative value is outweighted by the danger of unfair

prejudice, is inadmissible under this rule. State v. Scott, 331 N.C. 39, 43, 413 S.E.2d

787, 789 (1992). However, “[e]vidence which is probative of the State’s case

necessarily will have a prejudicial effect upon the defendant; the question is one of

 - 11 -
 STATE V. SPINKS

 Opinion of the Court

degree.” State v. Coffey, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (citation omitted).

It is within the trial court’s discretion whether to admit such evidence. Id.

 Defendant argues the testimony of alleged anal intercourse against a much

younger child by a much older adult, inflamed the jury to compel his conviction. The

evidence showed Defendant’s common scheme or plan to have forcible intercourse

with young female victims asleep in their bedrooms, while he and his daughter were

guests staying overnight in a home and to bribe the victims afterwards for their

silence. The probative value of Katy’s testimony, although prejudicial, did not

substantially outweigh the danger of unfair prejudice. Defendant has failed to show

the trial court abused its discretion in admitting Katy’s Rule 404(b) testimony under

Rule 403.

 V. Dr. Thomas’ Testimony

 Defendant next argues the trial court committed plain error by admitting (1)

Dr. Thomas’ assessment of “Child sexual abuse” and (2) her expert opinions which

impermissibly bolstered and vouched for Amy’s credibility. Defendant acknowledges

he did not preserve these errors by objection at trial. Defendant also argues that

because of this plain error, he received ineffective assistance of counsel.

 A. Standard of Review

 Unpreserved errors in criminal cases are reviewed only for plain error. N.C.R.

App. P. 10(a)(4); State v. Black, 308 N.C.736, 739-41, 303 S.E.2d 804, 805-07 (1983).

 - 12 -
 STATE V. SPINKS

 Opinion of the Court

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice—that, after examination of the entire
 record, the error had a probable impact on the jury’s
 finding that the defendant was guilty.

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and

quotation marks omitted).

 Defendant must show an error occurred and that the error was “fundamental”

such that the jury “probably would have returned a different verdict[,]” to receive a

new trial. Id. at 519, 723 S.E.2d at 335.

 B. Analysis

 1. “Child Sexual Abuse”

 Our Rules of Evidence prohibit an expert witness from commenting on the

credibility of another witness. State v. Wise, 326 N.C. 421, 426, 390 S.E.2d 142, 145,

cert. denied, 498 U.S. 853, 112 L. Ed. 2d 113 (1990). “[A]n expert may not testify that

sexual abuse has occurred without physical evidence supporting her opinion.” State

v. Towe, 366 N.C. 56, 60, 732 S.E.2d 564, 567 (2012) (citation and quotation marks

omitted). “However, if a proper foundation has been laid, an expert may testify about

the characteristics of sexually abused children and whether an alleged victim exhibits

such characteristics.” Id. at 62, 732 S.E.2d at 567-68 (citation and quotation omitted).

 Defendant asserts his case is controlled by Towe. The expert in Towe was the

director of the child sexual abuse team at the local hospital. Id. at 63, 732 S.E.2d at

 - 13 -
 STATE V. SPINKS

 Opinion of the Court

569. The jury heard she was a published author in the field of sexual exploitation of

children and had frequently been qualified as an expert in pediatrics and child sexual

abuse in previous cases. Id. at 63-64, 732 S.E.2d at 569.

 The expert in Towe testified that between 70-75% of children who have been

sexually abused have no abnormal physical findings, and she would place the victim

in that category. Id. at 60, 732 S.E.2d at 566. The Supreme Court found this

testimony to be improper and qualified as plain error. Id. at 64, 732 S.E.2d at 568.

 Dr. Thomas testified to general characteristics of abused children, but did not

offer an opinion that Amy had been sexually abused, or that Amy fell into the category

of children who have been sexually abused, but who showed no physical symptoms of

such abuse. The report published to the jury includes a statement “Chief Concern:

Possible child sexual abuse.” The controverted statement in Dr. Thomas’

examination report of Amy is a paragraph titled “ASSESSMENT AND

RECOMMENDATIONS,” where the paragraph begins with “Child sexual abuse by

[Amy’s] disclosure.”

 While the jury has the duty to weigh the credibility of the expert’s testimony,

the expert’s opinion tendered in Towe left little room for the jury to find the victim

incredible. The proffered testimony by the expert in Towe impermissibly bolstered

the credibility of the child victim. Towe, 366 N.C. at 63, 732 S.E.2d at 568. Dr.

Thomas’ testimony was not conclusory and left the ultimate issue to the jury to

 - 14 -
 STATE V. SPINKS

 Opinion of the Court

determine whether the facts and circumstances of the case were explainable by the

possibility presented by Dr. Thomas.

 Dr. Thomas did not offer an opinion that Amy had been sexually abused. The

phrase in her report merely introduces the paragraph of the report dealing with

Amy’s disclosures. Dr. Thomas’ testimony did not impermissibly bolster or vouch for

Amy’s veracity. See id. Defendant’s argument to the contrary is overruled.

 2. “Consistent,” “Compelling” and “Concerning”

 Defendant argues Dr. Thomas’ statements in her written report published to

the jury that Amy’s disclosures have been “consistent and compelling” and

subsequently that she “agree[s] with law enforcement in this compelling and

concerning case” served to impermissibly bolster Amy’s credibility.

 Defendant argues State v. Aguallo, State v. O’Connor and State v. Frady

require a new trial in this case. In Aguallo, the expert testified she thought the child

victim “was believable.” State v. Aguallo, 318 N.C. 590, 599, 350 S.E.2d 76, 81 (1986).

The Supreme Court held this was an impermissible expert opinion as to the

credibility of the victim. Id. at 599, 350 S.E.2d at 81. The Court in Aguallo found the

error to be prejudicial and allowed a new trial where the State’s evidence of the

defendant’s guilt was “not overwhelming.” Id., 350 S.E.2d at 82.

 In O’Connor, the expert testified she had found no physical indications of

sexual assault. State v. O’Connor, 150 N.C. App. 710, 711, 564 S.E.2d 296, 297, disc.

 - 15 -
 STATE V. SPINKS

 Opinion of the Court

review denied, 356 N.C. 173, 567 S.E.2d 144 (2002). She stated the victim had told

her he had been sexually assaulted on three occasions. Id. The expert’s written report

of her findings and conclusions was admitted into evidence without objection. Id. The

report contained the statement, “It is my impression that [J.M.’s] disclosure was

credible.” Id. This Court held it was plain error to admit into evidence that portion

of the report. Id. at 712, 564 S.E. 2d at 297.

 In Frady, the expert neither examined nor interviewed the victim. State v.

Frady, 228 N.C. App. 682, 684, 747 S.E.2d 164, 166 (2013). The trial court allowed

the expert witness to testify that the victim’s “disclosure [was] consistent with sexual

abuse.” Id. This Court held the expert’s statement was “essentially” an expression of

her opinion that the victim was credible. Id. at 686, 747 S.E.2d at 167. The Court

held this admission to be a prejudicial error where the only evidence of the

defendant’s guilt was the victim’s testimony and the State offered the expert

testimony as rebuttal, being the last testimony the jury would hear before retiring to

deliberate. Id.

 Our appellate courts have repeatedly held that it is not improper for an expert

to testify to a victim’s examination being “consistent” with the victim’s statements of

abuse. State v. Kennedy, 320 N.C. 20, 31-32, 357 S.E.2d 359, 366 (1987) (no error to

admit physician’s opinion that victim’s symptoms were consistent with sexual abuse);

State v. Wise, 326 N.C. 421, 427, 390 S.E.2d 142, 146 (1990) (no error where expert

 - 16 -
 STATE V. SPINKS

 Opinion of the Court

merely described her personal observations concerning the emotions of the victim

during the counseling sessions); State v. Marine, 135 N.C. App. 279, 281, 520 S.E.2d

65, 66 (1999) (no error where expert testified that one of the indicators that she used

to conclude victim suffered from post-traumatic stress syndrome was that the victim

“has experienced actual or threatened serious injury….”).

 While our courts have allowed admission upon proper foundation, an expert

opinion that the victim’s symptoms or physical examination are “consistent” with the

victim’s statements of abuse, Defendant asserts Dr. Thomas’ use of the terms

“consistent and compelling” and “compelling and concerning” are tantamount to

stating Amy’s allegations are credible.

 Our “courts have consistently held that the testimony of an expert to the effect

that a prosecuting witness is believable, credible, or telling the truth is inadmissible

evidence.” State v. Bailey, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988).

 At oral argument, Defendant argued the problematic word here is

“compelling.” Dr. Thomas’ report contains the term “compelling” twice. In the first

use, Dr. Thomas’ written statement is “Her disclosures have been consistent and

compelling.” Merriam Webster offers three definitions of compelling as “forceful,”

“demanding attention” or “convincing.” Compelling Definition, MERRIAM-

WEBSTER. COM, https://www.merriam-webster.com/dictionary/compelling (last

visited Oct. 26, 2017). The term “compelling” as used here could be construed as

 - 17 -
 STATE V. SPINKS

 Opinion of the Court

impermissible opinion testimony regarding Amy’s credibility. Bailey, 89 N.C. App. at

219, 365 S.E.2d at 655.

 The second use, the expert witness’ agreement with “law enforcement[’s]

involvement in this compelling and concerning case” is not as troubling. The context

of this statement reveals Dr. Thomas used the terms “compelling” and “concerning”

to connote forceful, demanding attention, gut-wrenching, troubling, worrying or any

of the many other adjectives that could describe the sex offenses.

 Presuming arguendo, the court’s admission of the statements in the doctor’s

report was error, we must determine whether it rises to the level of plain error. “A

plain error is one so fundamental as to amount to a miscarriage of justice or which

probably resulted in the jury reaching a different verdict than it otherwise would

have reached.” State v. Carroll, 356 N.C. 526, 539, 573 S.E.2d 899, 908 (2002). Thus

our question is whether the jury would probably have reached a different verdict if

this testimony had not been admitted. Bagley, 321 N.C. at 213, 362 S.E.2d at 251.

 In State v. Hammett, 361 N.C. 92, 97, 637 S.E.2d 518, 522 (2006), our Supreme

Court held the expert witness improperly vouched for the child victim’s credibility

when the expert added “that she would reach the same conclusion based on [the child

victim’s] history alone and that the physical evidence was not a necessary basis for

her conclusions” to her previous admissible testimony that her findings were

consistent with abuse. While the Court held the admission of this part of the expert’s

 - 18 -
 STATE V. SPINKS

 Opinion of the Court

testimony was error, the Court recognized, as here, the issue had not been preserved

by the defendant and applied plain error review. Id. at 98, 637 S.E.2d 522. Under a

plain error review, the Supreme Court “believe[d] the jury would not have acquitted

defendant if the challenged statements had been excluded.” Id. at 99, 637 S.E.2d at

523.

 Here, the victim testified and described in detail about the alleged assault. The

State offered witnesses, who corroborated Defendant’s access to the victim, as well as

a 404(b) witness showing Defendant’s common scheme to have intercourse with

young females. This other evidence along with Dr. Thomas’ trial testimony of Amy’s

demeanor, emotional state and behavior since the alleged incident provide sufficient

other evidence of Defendant’s guilt. Defendant has failed to show prejudice in the

trial court in the admission of Dr. Thomas’ statements and reports. The trial court’s

admission of Dr. Thomas’ statements in her report that Amy’s disclosures have been

“consistent and compelling” does not rise to the level of plain error.

 3. Ineffective Assistance of Counsel (“IAC”)

 Defendant asserts an alternative argument if this Court does not find plain

error in the admission of Dr. Thomas’ report. Defendant argues his counsel was

ineffective because he failed to object when the State tendered Dr. Thomas as an

expert witness or when the State introduced Dr. Thomas’ report. “When a defendant

attacks his conviction on the basis that counsel was ineffective, he must show that

 - 19 -
 STATE V. SPINKS

 Opinion of the Court

his counsel’s conduct fell below an objective standard of reasonableness.” State v.

Braswell, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citing Strickland v.

Washington, 466 U.S. 668, 687, 80 L.Ed.2d 674, 693 (1984)).

 To meet this burden, Defendant must satisfy Strickland’s two-part test:

 First, the defendant must show that counsel’s performance
 was deficient. This requires showing that counsel made
 errors so serious that counsel was not functioning as the
 “counsel” guaranteed the defendant by the Sixth
 Amendment. Second, the defendant must show that the
 deficient performance prejudiced the defense. This
 requires showing that counsel’s error were so serious as to
 deprive the defendant of a fair trial, a trial whose result is
 reliable.

Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693.

 IAC claims brought on direct review are “decided on the merits when the cold

record reveals that no further investigation is required.” State v. Fair, 354 N.C. 131,

166, 557 S.E.2d 500, 525 (2001) cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).

Our Supreme Court has recently held that whether defense counsel “made a

particular strategic decision remains a question of fact, and is not something which

can be hypothesized” by an appellate court on direct appeal. State v. Todd, __ N.C.

__, __, 799 S.E.2d 834, 838 (2017).

 Defendant presents attorney conduct that cannot be determined by the “cold

record” alone. We dismiss Defendant’s IAC claim without prejudice.

 VI. Lifetime SBM

 - 20 -
 STATE V. SPINKS

 Opinion of the Court

 Defendant petitions this Court issue our writ of certiorari to hear his appeal.

We allow Defendant’s petition to review his claim. He asserts the State failed to

establish his enrollment in SBM constituted a reasonable search under the Fourth

Amendment as required by Grady v. North Carolina, __ U.S. __, __, 191 L. Ed. 2d

459, 462-63 (2015). This Court has made it clear that “the State shall bear the burden

of proving that the [satellite-based monitoring] program is reasonable.” State v. Blue,

__ N.C. App. __, __, 783 S.E.2d 524, 527; State v. Morris, __ N.C. App. __, __, 783

S.E.2d 528, 530.

 The transcript of Defendant’s SBM hearing shows:

 [Prosecutor]: Your Honor, looking at the AOC-CR 615
 form, Judicial Findings and Order Sex Offenders Active
 Punishment, the State would contend--

 THE COURT: Do you have it filled out?

 [Prosecutor]: No, sir.

 THE COURT: Let’s get it. You have it filled out here?

 THE CLERK: No, it’s not filled out.

 [Prosecutor]: The State contends that number one, that
 would be a B1 sexually violent offense.

 THE COURT: That’s also a rape of a child.

 [Prosecutor]: No, sir, that’s a different statute. That is
 under the age of 13.

 THE COURT: A B1?

 - 21 -
 STATE V. SPINKS

 Opinion of the Court

[Prosecutor]: Yes, sir.

THE COURT: And two would be the defendant has not
been classified as a sexually violent predator. Number
three; the defendant is not a recidivist. Number four; the
offense of conviction is an aggravated offense and that’s as
to the statutory rape, and five; the offense did involve the
physical, mental and sexual abuse of a minor.

[Prosecutor]: Yes, sir. As to the order, we would contend
number one should be A; natural life registration because
you find one of the factors two to four was found in the
affirmative.

THE COURT: For his natural life?

[Prosecutor]: Yes, sir, and satellite based monitoring, I
believe 2B, which is because the aggravating factors were
found in the affirmative.

THE COURT: That’s correct, 2B?

[Prosecutor]: Yes, sir.

THE COURT: All right. I’m going to find that he has been
convicted of a reportable conviction under 14-208.6, he has
a sexually violent offense. Under 14-208(5), he has not been
classified as a sexually violent predator, under the
procedure set out in 14-208.20, he is not a recidivist; in
number three, it is an aggravated offense and it did involve
the physical[,] mental[,] and sexual abuse of a minor, and
the registration is going to be for his natural life upon
release from imprisonment. He is enrolled in satellite
based monitoring for his natural life unless terminated
pursuant to the statute. That’s going to be the judgment of
the Court as well.
 ....
[Defense counsel]: Your honor, I talked to my client if this
were to happen we are giving Notice of Appeal.

 - 22 -
 STATE V. SPINKS

 Opinion of the Court

 Under our precedents, if Defendant had challenged the constitutionality of the

SBM as applied to him, we would have been required to reverse the court’s order of

SBM. See State v. Greene, __ N.C. __, __ S.E.2d __, 2017 WL 4364396, at *2 (N.C. Ct.

App. Oct. 3, 2017). However, here Defendant raised no constitutional challenge at

any point of this “hearing.” Defendant’s counsel filed no motion, objection or

argument that the SBM imposed upon Defendant was an unreasonable search.

 In State v. Bishop, __ N.C. __, __ S.E.2d __, 2017 WL 4364391 (2017), the

defendant was convicted of taking indecent liberties with a child. The trial court

sentenced him to SBM for thirty years. 2017 WL 4364391 at 1. At the hearing, the

defendant did not challenge the court’s imposition of SBM on constitutional grounds.

Id. Further, the defendant did not timely file a notice of appeal. Defendant petitioned

this Court for a writ of certiorari. Before this Court, the defendant argued the petition

should issue and sought this Court to invoke Rule 2 of the North Carolina Rules of

Appellate Procedure, because his constitutional argument was otherwise waived on

appeal. Id. This Court held the defendant was “no different from other defendants

who failed to preserve their constitutional arguments in the trial court, and because

he has not argued any specific facts that demonstrate manifest injustice if we decline

to invoke Rule 2, we do not believe this case is an appropriate use of that

extraordinary step.” Id. at 2.

 - 23 -
 STATE V. SPINKS

 Opinion of the Court

 As with the defendant in Bishop, Defendant cannot prevail on this issue

without invoking Rule 2, because his constitutional argument was waived. In our

discretion, we decline to invoke Rule 2 to issue a writ of certiorari to review

Defendant’s unpreserved argument on direct appeal. Defendant’s purported appeal

of his SBM is dismissed.

 As with the admission of expert testimony, Defendant argues in the alternative

that his counsel rendered IAC and that the designation of SBM proceedings as civil

should not bar a determination that he received ineffective assistance of counsel on

this issue. Defendant concedes we are bound by our precedents in State v. Wagoner,

199 N.C. App. 321, 332, 683 S.E.2d 391, 400 (2009) (holding IAC claims are only

available in criminal matters and SBM is not a criminal punishment) and In re Civil

Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989) (“Where a panel of the Court of

Appeals has decided the same issue, albeit in a different case, a subsequent panel of

the same court is bound by that precedent[.]”). Defendant’s argument is dismissed.

 VII. Conclusion

 The trial court properly allowed Katy’s testimony of Defendant’s sexual assault

under Rules 404(b) and 403. Defendant failed to demonstrate any plain error with

respect to the admission of Dr. Thomas’ expert testimony and report. Defendant has

waived direct appellate review of any Fourth Amendment challenge to the order

requiring him to enroll in the SBM program for life.

 - 24 -
 STATE V. SPINKS

 Opinion of the Court

 We find no error in the jury’s convictions or in the judgments entered thereon.

Defendant’s petition for writ of certiorari to review the trial court’s imposition of SBM

is allowed. His appeal of SBM as applied to him is dismissed without prejudice.

Defendant’s IAC claims regarding the expert testimony have been prematurely

asserted on direct appeal and are dismissed without prejudice. It is so ordered.

 NO ERROR IN PART. IAC CLAIMS DISMISSED WITHOUT PREJUDICE IN
 PART.

 Judge HUNTER concurs.

 Judge STROUD concurs with separate opinion.

 - 25 -
 No. COA17-413– State v. Spinks

 STROUD, Judge, concurring.

 I concur in the majority opinion fully on all issues except the last, as to the

SBM order. On this issue, I concur in the result only. I write separately to note my

concern regarding the trial court’s failure to consider the Grady issues arising from

the SBM order. But I will not address the substance of the issue or dissent primarily

because a hearing to consider “the reasonableness of [the] search” depends upon “the

totality of the circumstances, including the nature and purpose of the search and the

extent to which the search intrudes upon reasonable privacy expectations.” Grady v.

North Carolina, __ U.S. __, __, 191 L. Ed. 2d 459, 462, 135 S. Ct. 1368, 1371 (2015).

The reasonableness of the search and the totality of the circumstances under which

the SBM will operate will depend necessarily upon the defendant’s circumstances and

the operation of SBM at the time the monitoring will be done of the defendant.

Attempting to determine the reasonableness of satellite based monitoring which will

not take effect for nearly 50 years and possibly as long as 66 years would be an

exercise in futility.

 At the time of his conviction and sentencing, defendant was almost 32 years

old. He was sentenced to two consecutive terms of imprisonment of a minimum of

280 months and a maximum of 396 months. In other words, he will be in prison for

at least 46 years, 7 months or as much as 66 years. If he is released from prison upon

completion of his minimum sentences, he will be nearly 79 years old; if he is released

after completing his maximum sentences, he will be nearly 98 years old.
 STATE V. SPINKS

 STROUD, J., concurring

 If the trial court were to conduct a Grady hearing, it would need to consider

evidence presented about various factors, such as “the nature of the privacy interest

upon which the search . . . intrudes”; “the character of the intrusion that is complained

of” and the type of private information the search discloses; and “the nature and

immediacy of the governmental concern at issue . . ., and the efficacy of [government

action] for meeting it.” Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654, 658, 660,

132 L. Ed. 2d 564, 575, 577-78, 579, 115 S. Ct. 2386, 2391, 2393, 2394 (1995). One

type of evidence at this type of hearing would be information regarding the size and

intrusiveness of the monitoring device as well as how it functions to monitor the

defendant and how the device is maintained. Even if a court were to consider only

the facts relevant to the monitoring device -- ignoring whether a 98 year old man

presents the same potential threats to society as a 32 year old man -- it is simply

impossible to predict what sort of satellite-based monitoring technology will be used

in 2063, or in 2083, or anywhere in between. The SBM technology as it exists now is

irrelevant to this defendant. The changes in technology in the last 47 years have

been tremendous. The cell phone is just one example of these changes. Wireless

phones existed only in science fiction 47 years ago; cell phones were not invented until

1973. Cell phones used to be large, bulky devices that weighed several pounds. Even

just a few years ago, cell phones had one function: phone calls. Cell phones now weigh

a few ounces and have more computing and data storage capability than the largest

 2
 STATE V. SPINKS

 STROUD, J., concurring

and most advanced computers in the world of 47 years ago. And 66 years ago, in

1951, the first commercial computer produced in the United States, the UNIVAC,

debuted. It weighed about 16,000 pounds and took up about 382 square feet of floor

space; its computing speed was glacial compared to the most basic cell phone

available today.

 The United States Supreme Court has recognized in recent cases the need to

consider how modern technology actually works as part of analysis of the

reasonableness of searches. See Riley v. California, __ U.S. __, __, 189 L. Ed. 2d 430,

446-47, 134 S. Ct. 2473, 2489-90 (2014) (“One of the most notable distinguishing

features of modern cell phones is their immense storage capacity. Before cell phones,

a search of a person was limited by physical realities and tended as a general matter

to constitute only a narrow intrusion on privacy. . . . But the possible intrusion on

privacy is not physically limited in the same way when it comes to cell phones. The

current top-selling smart phone has a standard capacity of 16 gigabytes (and is

available with up to 64 gigabytes). Sixteen gigabytes translates to millions of pages

of text, thousands of pictures, or hundreds of videos. . . . . The storage capacity of cell

phones has several interrelated consequences for privacy. First, a cell phone collects

in one place many distinct types of information . . . that reveal much more in

combination than any isolated record. Second, a cell phone’s capacity allows even

just one type of information to convey far more than previously possible. . . . Third,

 3
 STATE V. SPINKS

 STROUD, J., concurring

the data on a phone can date back to the purchase of the phone, or even earlier. . . .

Finally, there is an element of pervasiveness that characterizes cell phones but not

physical records.” (Citations omitted)). And again, the technology of SBM is just one

part of the analysis of the “totality of the circumstances” which the trial court must

undertake based on Grady.

 I would encourage the General Assembly to consider addressing the absolute

futility of having trial courts conduct SBM hearings immediately upon sentencing

offenders who are to serve extremely long sentences. Holding this type of hearing so

many years before any possible release is simply a waste of time and resources for

prosecutors, defense counsel, and the trial courts. A hearing to consider SBM held

shortly before a convicted sex offender is to be released upon completion of his

sentences would allow the trial court to make a meaningful assessment of SBM based

upon technology available and the offender’s circumstances at that time.

 I therefore concur with the majority opinion on all issues except the last. On

that last issue -- relating to the SBM order -- I concur only in the result.

 4